The Honorable Robert B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br> v.<br><br>TROY X. KELLEY,<br><br>      Defendant. | No. 3:15-cr-05198-RBL<br><br>DEFENDANT TROY X. KELLEY'S RESPONSE TO GOVERNMENT'S MOTION FOR INQUIRY CONCERNING POTENTIAL CONFLICTS OF INTEREST |

## I.      INTRODUCTION

Although captioned as a "motion for inquiry," the government's motion unmistakably seeks to disqualify defense counsel Mark N. Bartlett from representing Defendant Troy X. Kelley in this matter, depriving Mr. Kelley of his Sixth Amendment right to the counsel of his choosing. To justify its veiled request for disqualification, the government offers a speculative conflict theory that relies on a central—but faulty—premise: that Mr. Bartlett "might" have provided certain advice that "could" lead to him being called as a defense witness.

Put simply, Mr. Bartlett never provided any such advice. As explained in the declarations of Mr. Bartlett and Mr. Kelley—who has consulted with independent counsel in connection with the government's motion—neither Mr. Bartlett nor any other lawyer from Davis Wright Tremaine LLP ("DWT") provided any advice regarding the use of funds from the Vanguard account in the name of Blackstone International (the "Blackstone Account") for a

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 1
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

retainer, for remitting tax payments to the IRS, or for any other purpose. On that basis alone, the government's motion should be denied, and its requested "inquiry" should end here.[1]

Nonetheless, out of an abundance of caution and to ensure that the government's efforts to strip him of counsel of his choosing do not succeed, Mr. Kelley—after consultation with independent counsel—has waived any advice-of-counsel defense based on any advice Mr. Bartlett or any other DWT lawyer could conceivably have given concerning the issues identified by the government.[2] In light of Mr. Kelley's informed waiver, and the lack of any disqualifying advice in the first place, there is no possibility Mr. Bartlett will be called as a witness (or could somehow act as an unsworn witness) with respect to such issues. Because no basis exists for disqualifying Mr. Bartlett and DWT from representing Mr. Kelley, the Court should deny the government's motion.

One procedural note: We are filing this response in the public record without any redactions. No part of this response or the accompanying declarations is being filed under seal, because there is no information included in this response or the accompanying declarations covered by the attorney-client or work product privileges. To the extent that any information in this response or the accompanying declarations could arguably be covered by RPC 1.6 even if

---

[1] As discussed below, the government's secondary conflict theories—based on advice received from a different lawyer in a different firm, the manufactured possibility the government might try to call a non-lawyer employee from Mr. Bartlett's firm to testify, or Mr. Bartlett's prior representation of Mr. Kelley's wife—are equally meritless.

[2] Our understanding of the hypothetical advice provided by Mr. Bartlett or DWT that the government asserts might be disqualifying is:
  (a) advice regarding the $908,397 retainer provided from the Blackstone Account to DWT in March 2015;
  (b) advice regarding the payment of $447,421 from the Blackstone Account to the Internal Revenue Service in March 2015; and
  (c) advice regarding the withdrawal and payment of taxes on $245,000 by Blackstone International for each of tax years 2013 to 2015.

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 2
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

not privileged -- RPC 1.6 is broader in scope than the attorney-client privilege -- Mr. Kelley wishes any such information to be public. [3]

## II. BACKGROUND

### A. Mr. Kelley and Post Closing Department

Mr. Kelley is a licensed attorney who worked in the real estate reconveyance industry for well over 20 years. In 2002, Mr. Kelley operated his own business under the name Post Closing Department to provide a specialized service to the real estate market. Post Closing Department ensured that reconveyances were properly completed, and in exchange, it collected a fee that was set by the title companies, not by Post Closing Department or Mr. Kelley.[4]

In 2008, Mr. Kelley took steps to shift his focus and energy from managing Post Closing Department and its employees, to serving the citizens of the State of Washington as an elected official. At that time, Mr. Kelley consolidated the majority of funds from the business accounts into a single account that eventually became the Blackstone Account. Those funds have always been fully disclosed to the Internal Revenue Service, and a portion of the funds were used in 2011 to settle a civil lawsuit brought by a title company named Old Republic.

---

[3] As an additional procedural note, Mr. McCallum has not entered an appearance in this case, making, as discussed below, any advice he may or may not have provided irrelevant to the matter before the Court. Accordingly, we do not address in this response whether Mr. McCallum provided any advice that the government claims could be disqualifying, because it is not reasonably necessary to do so, and therefore, DWT and LeSourd are obligated under RPC 1.6 to safeguard such confidential and privileged information, even as to the Court. By not addressing Mr. McCallum's representation in connection with the criminal tax investigation, however, we are not in any way implying the existence of a conflict issue related to any advice Mr. McCallum provided during the course of his representation, even if he eventually appears in this matter. Any issues could only be properly addressed at the time of any such appearance.

[4] His company accepted the risk that they might be held liable if there were errors in the reconveyance process that came to light later, sometimes years after completed the real estate transactions. In addition, the fees paid to Post Closing Department were always fully disclosed to the consumer as part of the require HUD-1 Settlement Statement, and were fully agreed to by the consumers and incorporated into the Escrow Contracts. Finally, this entire industry was closely regulated under the Real Estate Settlement Procedures Act ("RESPA").

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 3
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

That lawsuit was a matter of public record.  It is equally clear that no other title company chose to sue Mr. Kelley or the Post Closing Department over the funds he received.[5]

Beginning in 2011 and continuing through 2015, Mr. Kelley received annual $245,000 payments from the Blackstone Account.  Mr. Kelley reported the money he received to the IRS and paid applicable taxes on the amounts.  Mr. Kelley's tax payments began long before there was any government investigation.  Mr. Kelley's method of reporting and paying taxes, in the end, would result in the United States Treasury receiving a higher dollar amount of tax payments than it would have received under the government's theory of reporting.

### B.   The Blackstone Account, the Retainer Payment, and the Government's Silence.

As early as April 2013 (and likely before that), the government knew Mr. Kelley was a signatory to the Blackstone Account and knew of the funds in the account.  Declaration of Mark N. Bartlett ("Bartlett Decl.") ¶ 6.  Since that time, the government took no action to seize or freeze that account, or even to request that it be secured in any way.  *Id.* ¶ 9.  There is a reason for that.  The question of whether the funds in that account are stolen funds, as the government alleges in Count 1 of the Indictment (and appears to treat as undisputed fact for this motion), is a question emphatically disputed by Mr. Kelley.  Declaration of Troy X. Kelley ("Kelley Decl.") ¶ 7.  The government's theory is that an alleged breach of contract, even if the contracting party does not complain, is equivalent to theft.  But Mr. Kelley disagrees, and the fact that the government alleges funds are stolen does not make it so.  Declaration of John A. Strait ("Strait Decl.") ¶¶ III.1, V.A.1-3.

---

[5] Moreover, none of these other individuals or entities who were engaging in the same business practices used by Post Closing Department have been criminally prosecuted or accused of "possessing stolen property."  That is true not just in this district, but throughout the United States.  Now, however, eight years after the last fees were paid to Post Closing Department, the government is attempting to rewrite the business practices that existed at that time and convert a breach of contract action (at best) into a federal criminal prosecution.

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 4
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1 　　　　As early as April 2013 (when the IRS interviewed him), Mr. Kelley became aware that
2 the government was conducting a tax investigation and was considering charging him with
3 potential tax offenses.  The government *never* informed Mr. Kelley or his attorneys that it
4 intended to seek forfeiture of the funds in the Blackstone Account or any other account.
5 Bartlett Decl. ¶ 9.  The government also never threatened or took any action to seize or freeze
6 that account or any other accounts for which Mr. Kelley had signature authority.  *Id.*  In fact,
7 when the government informed Mr. Kelley's attorneys on March 26, 2015 that it intended to
8 bring charges against Mr. Kelley, it did not include any forfeiture allegation in the list of
9 charges it was considering.  *Id.* ¶ 8 & Ex. A.

10 　　　　Mr. Kelley had been aware of the government's intent to seek an indictment for some
11 time prior to March 26, 2015, although he did not know what specific charges the government
12 was contemplating until March 26, 2015. *Id.* ¶ 7–8 & Ex. A.  As is the standard practice in
13 criminal defense cases, Mr. Kelley provided a retainer designed to cover future anticipated fees
14 and expenses for his defense. [6]  *Id.* ¶ 10.  The retainer of $908,397 was meant to be held by
15 DWT to cover future anticipated legal fees incurred by both DWT and Robert M. McCallum of
16 LeSourd & Patten, P.S.[7]  *Id.  At* the same time, Mr. Kelley made a voluntary payment to the
17 IRS of the estimated potential taxes due and owing on that retainer payment: $447,421.  At the
18 time he made these payments, the government had not informed the defense that it intended to
19 seek forfeiture of any funds, and had neither threatened not taken any action to seize or freeze

---

[6] The reasons for this practice in criminal cases are that such cases may result in a loss of liberty for the defendant (making payment after the fact difficult), and that courts are at times hesitant to allow—and the local rules do not necessarily permit—defense counsel to withdraw from a case if funds are no longer available to pay attorneys' fees.

[7] Mr. McCallum has provided representation and advice to Mr. Kelley since the spring of 2013 in connection with the criminal tax investigation.  Although Mr. McCallum initially entered a notice of conditional appearance in this matter [Dkt. 7], he has since filed a notice of non-representation [Dkt. 12].  Accordingly, only Mr. Bartlett currently represents Mr. Kelley in this case [Dkt. 11].

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 5
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

any funds. *See* Strait Decl. ¶¶ III.1, V.A.1-3. The two checks were written from the Blackstone Account.

### C. The Government's Abrupt Declaration of Intent to Seek Forfeiture of the Blackstone Account Funds.

The Indictment was returned on April 15, 2015, and Mr. Bartlett received it the next day, April 16, 2015. *Id.* ¶ 11. Upon reviewing the Indictment, Mr. Bartlett noted that—for the first time—the government mentioned the Blackstone Account and the IRS payments, and had included a count seeking forfeiture.[8] *Id.* Immediately upon reviewing the Indictment, Mr. Bartlett—*on his own initiative*—sent an email to the government's counsel regarding the $908,397 in DWT's trust account and other unrelated funds held in LeSourd's trust account:

> "Rob [McCallum] and I obviously noted the forfeiture count and the language in paragraph 95. Please let us know if you are going to attempt to seize the retainers Troy has provided us and are currently being held in our respective law firm trust accounts."

*Id.* ¶ 11 & Ex. B. AUSA Andrew Friedman responded the next day, April 17, 2015:

> "As you know, it is the policy of the Department of Justice to seek forfeiture of any property, real or personal, that constitutes or is derived from proceeds traceable to any offense constituting "specified unlawful activity." We are likely to attempt to seize this money."

*Id.* This was the first time that the government ever mentioned the possibility that any of the funds from the Blackstone Account could be subject to forfeiture, and it did so only in response to Mr. Bartlett's email. *See* Strait Decl. ¶¶ V.A.1-3.

After receiving that April 17 email from AUSA Friedman, Mr. Bartlett segregated the $908,397 in DWT's client trust account, none of which had been used for fees or otherwise disbursed, and began discussions with the government about how the money should be handled pending disposition of the case. *Id.* ¶ 12. The result of those discussions was a May 13, 2015 Standstill Agreement, which provided that the funds would be held in that segregated DWT trust account for a period of 75 days. *Id.* ¶ 12 & Ex. C. The funds have not been depleted or

---

[8] The Indictment's forfeiture count does not mention the Vanguard account, or the DWT client trust account, but rather seeks only a money judgment in the amount of $1,463,171 from any source.

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 6
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

used for any purpose. *Id.* ¶ 12. The Standstill Agreement is obviously still in effect, and regardless of its expiration date, the funds will not be depleted for any purpose until after Mr. Kelley's case is resolved, unless the Court orders otherwise. *Id.*

### III.   ARGUMENT

Any person charged with a criminal offense must be afforded a "fair opportunity to secure counsel of his own choice." *Powell v. State of Alabama*, 287 U.S. 45, 53, 53 S. Ct. 55, 77 L. Ed. 158 (1932). In fact, "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment." *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L. Ed. 2d 140 (1988). In that vein, "[d]isqualification [of counsel] is a drastic measure and the Court must consider the danger of a motion to disqualify opposing counsel as a litigation tactic." *Silva v. Gregoire*, 2007 WL 1046888, at *1 (W.D. Wash. Apr. 3, 2007) (Strombom, M.J.). "Judges must exercise caution not to paint with a broad brush under the misguided belief that coming down on the side of disqualification raises the standard of legal ethics and the public's respect. The opposite effects are just as likely—encouragement of vexa[t]ious tactics and increased cynicism by the public." *Lord Elec. Co. v. Titan Pac. Constr. Corp.*, 637 F. Supp. 1556, 1564 (W.D. Wash. 1986) (citation omitted) (Coughenour, J.). "Because of the potential for abuse, disqualification motions should be subject to particularly strict judicial scrutiny.'" *Silva*, 2007 WL 1046888, at *1 (quoting Optyl Eyewear Fashion Int'l Corp. v. Style Cos., 750 F.2d 1045, 1050 (9th Cir. 1985)); *see also Lord Elec. Co.*, 637 F. Supp. at 1562, 1564.

"The decision to disqualify a defendant's chosen counsel is a serious matter and must be decided on a case-by-case basis. *United States v. Franklin*, 177 F. Supp. 2d 459, 464 (E.D. Va. 2001). "Because a motion seeking to disqualify counsel can be used improperly for purely strategic purposes, the moving party bears a high standard of proof." *United States v. Perry*, 30 F. Supp. 3d 514, 533 (E.D. Va. 2014) ( internal quotations omitted).

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 7
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**A.  The Government's Motion Rests on a Single Faulty Premise; In Fact, Mr. Bartlett Never Advised Mr. Kelley Concerning the Blackstone Account.**

The government concedes it "does not know to what extent the[] payments [from the Blackstone Account of the retainer funds and the corresponding taxes] may have been made on advice from counsel." Mot. at 7. Nonetheless, the government's motion is founded on the central premise that the payments were made on advice from Mr. Bartlett or another DWT attorney. From this premise, the government hypothesizes that (a) Mr. Kelley might seek to assert an advice-of-counsel defense, (b) to establish that defense, Mr. Kelley might seek to call Mr. Bartlett as a witness to testify at trial, (c) Mr. Bartlett might function as a "unsworn witness" at trial because of his knowledge of the payment, and (d) Mr. Bartlett might therefore be subject to disqualification as Mr. Kelley's counsel under RPC 3.7(a)'s "advocate-witness rule."[9] The government's speculative disqualification theory, then, rests on the foundational assumption that Mr. Bartlett advised Mr. Kelley about the payment of the retainer funds from the Blackstone Account. <u>He did not.</u>

As set forth in Mr. Bartlett's declaration, he did not provide and was not involved in providing *any* legal advice to Mr. Kelley concerning (a) the retainer payment of $908, 397 from the Blackstone Account for the defense of Mr. Kelley's case by DWT and LeSourd, (b) the tax payment of $447,421 from the Blackstone Account to the Internal Revenue Service, or (c) the withdrawal and payment of taxes on $245,000 from the Blackstone Account for each of tax years 2013 to 2015. Bartlett Decl. ¶ 12. Mr. Kelley's declaration confirms that Mr. Bartlett did not provide and was not involved in providing any such advice. Kelley Decl. ¶ 2–3. Thus, both Mr. Kelley and Mr. Bartlett state unequivocally under oath that Mr. Bartlett was in no way involved in providing any of the advice that the government posits might be disqualifying if Mr. Kelley sought to rely on it. Given that, Mr. Kelley has no intention of calling, and no

---

[9] RPC 3.7(a) states that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness," unless "the testimony relates to an uncontested issue," or "the lawyer has been called by the opposing party" and the court permits continued representation (or one of two other exceptions not relevant here).

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 8
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

reason for calling, Mr. Bartlett as a witness in support of the advice-of-counsel defense that the government hypothesizes might exist. Therefore, the conflict of interest or advice-of-counsel defense involving advice given by Mr. Bartlett that the government hypothesizes simply does not exist. *See United States v. Gorski*, 36 F. Supp. 3d 256, 265 (D. Mass. 2014) ("In evaluating the potential for conflict, 'the court may rely on counsel's representations that no such conflict exists.'") (quoting *United States v. Santiago-Lugo*, 167 F.3d 81, 84 (1st Cir. 1999)).[10]

Because Mr. Bartlett was not involved in providing advice on which Mr. Kelley might rely for an advice-of-counsel defense, the two cases relied upon in the government's motion are inapposite. In *United States v. Evanston*, the Tenth Circuit affirmed disqualification of the defendant's counsel because various documents reflected that counsel had advised the client concerning the alleged fraudulent scheme and had reviewed and advised the client about correspondence which the government believed demonstrated the defendant's willfulness in carrying out the scheme. 584 F.3d 904, 906–08 (10th Cir. 2009). Similarly, in *United States v. Swafford*, the Eighth Circuit affirmed the disqualification of defense counsel because another lawyer at the same firm had previously advised the defendant about the legality of his iodine sales, which was the conduct that formed the basis for the controlled-substance crimes with which he was charged. 512 F.3d 833, 839-41 (6th Cir. 2008). In both *Evanston* and *Swafford*, the disqualified counsel's prior advice (or the advice of other lawyers in his firm) was essential to proving (or disproving) elements of the underlying offenses charged by the government. In contrast to the counsel disqualified in *Evanston* and *Swafford*, Mr. Bartlett was not involved in providing any advice about payments from the Blackstone Account.[11]

---

[10] As Professor Strait points out, DWT would not be disqualified under RPC 3.7 even if Mr. Bartlett had provided the advice posited by the government (which he did not). Strait Decl. ¶¶ V.B.1-5.

[11] In the same vein, the government also posits that Mr. Bartlett could have provided advice relating to Mr. Kelley's withdrawal of $245,000 from the Blackstone Account in each of tax years 2013 through 2015. Mot. at 14. As set forth in Mr. Bartlett and Mr. Kelley's

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 9
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Where—as here—the testimony of counsel is not necessary to the presentation of a defendant's case, courts are understandably loathe to adopt the government's view of how the case should be presented when that view would require defense counsel's disqualification. "The attorney and client are in the best position to determine the necessity of counsel's testimony.... If it is counsel's and client's best judgment that they can get by without testimony from counsel, then it is certainly not up to [the opposing party] to urge upon them a different plan of presentation that would necessitate disqualification." *Perry*, 30 F. Supp. 3d at 540 (quoting *Adelman v. Kernbach*, 43 Va. Cir. 544, 546 (Norfolk 1997)) (alterations omitted). Under these circumstances, "it would be improper to 'ignore the representation of defense] counsel' and, 'based solely upon [the government's] conjecture,' conclude that counsel must be disqualified due to the possibility that a hypothetical series of events could occur that would render defense counsel's testimony necessary." *Id.* (quoting *Aetna Cas & Surety Co. v. United States*, 570 F.2d 1197, 1201 (4th Cir. 1978)) (alterations omitted). On this basis alone, the Court should deny the government's motion.

> **B.    In Any Event, After Consulting With Independent Counsel, Mr. Kelley Has Waived Any Advice-of-Counsel Defense Arising From Advice the Government Hypothesizes Mr. Bartlett Could Have Given About the Blackstone Account.**

"Where the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right is to take precedence must generally be left to the defendant and not be dictated by the government." *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003). The Court is required to disqualify counsel only in those situations where counsel "has an actual conflict that is so severe as to indicate *per se* that the rendering of effective assistance will be impeded[.]" *Id.* In lesser situations—and particularly where an "attorney suffers from a lesser actual or only a potential conflict, [the court] may accept a

---

declarations, Mr. Bartlett never provided or was involved in providing such advice. *See* Bartlett Decl. ¶ 13; Kelley Decl. ¶ 2-3. Thus, this claimed justification for disqualification fails for the same reason as the government's theory of disqualification arising from the retainer and tax payments.

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 10
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

1  defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit

2  [him] to be represented by the attorney of his choice." *Id.* (quoting *United States v. Levy*, 25

3  F.3d 146, 153 (2d Cir. 1994)) (alteration omitted).  Many courts have recognized that "[e]ven

4  where an actual conflict exists, ... a defendant may waive [the] conflict and elect to have the

5  attorney continue representation, so long as that waiver is knowing, intelligent, and voluntary."

6  *Gorski*, 36 F. Supp. 3d at 265 (quoting *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 68 (1st Cir. 2009)).

7  But even if questions somehow remain, Mr. Kelley seeks to ensure that the

8  government's efforts to strip him of the counsel of his choosing do not succeed.  Kelley Decl. ¶

9  4; Short Decl. ¶ 4.  Mr. Kelley retained Floyd G. Short of Susman Godfrey L.L.P. as

10 independent counsel so that he could consult with him in connection with the government'

11 motion.  Declaration of Floyd G. Short ("Short Decl.") ¶ 1.  Mr. Short previously served as an

12 Assistant United States Attorney in the Western District of Washington for over ten years,

13 including for three years as Supervisor of the Complex Crimes Unit.  *Id.*  As set forth in his

14 declaration filed with the Court, Mr. Short carefully reviewed the Indictment, the government's

15 motion, and various documents and information referenced in that motion, and he met at length

16 with Mr. Kelley and discussed the motion with him fully.  *Id.* ¶ 3; Kelley Decl. ¶ 3.

17 After consulting with Mr. Short, Mr. Kelley has voluntarily, knowingly, and

18 intelligently chosen to waive any advice-of-counsel defense based on calling Mr. Bartlett or

19 any other DWT lawyer to discuss the advice the government claims would be disqualifying (as

20 set forth in Mr. Kelley's declaration).  Kelley Decl. ¶ 4; Short Decl. ¶ 4.  Mr. Kelley's waiver

21 is reflected in his own sworn declaration, and Mr. Short as independent counsel is satisfied that

22 his opinion was made voluntarily, intelligently, and knowingly. Kelley Decl. ¶ 4; Short Decl. ¶

23 4.  Although, as noted above, although the advice that the government posits might be

24 disqualifying was not provided by Mr. Bartlett or DWT, Mr. Kelley's informed waiver should

25 suffice to eliminate any residual doubt that could possibly exist.

26

27

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 11
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

### C. The Government's Remaining Justifications for Disqualifying Mr. Bartlett Are Equally Meritless.

The government's motion also raises three additional theories that purportedly justify disqualifying Mr. Bartlett, all of which lack merit.

#### 1. Mr. Bartlett Is Not Subject to Imputed Disqualification Based Solely on the Possibility that Other Unaffiliated Counsel Might Testify.

Clearly aware of the possibility that Mr. Bartlett did not provide any disqualifying advice to Mr. Kelley, the government alternatively suggests—with no authority—that Mr. Bartlett should be subject to imputed disqualified based on the government's speculation that Mr. McCallum may have advised Mr. Kelley concerning the tax payments.[12]  In support of this novel imputed disqualification theory, the government hypothesizes that "Mr. Bartlett might well have been present and involved when any advice was given, and might be perceived by the jury as an unsworn witness."  The government does not explain what sort of "involvement" Mr. Bartlett could have had, or what involvement would be necessary to give rise to imputed disqualification.  Nor does the government explain how the jury might perceive Mr. Bartlett to be an unsworn witness based on his mere presence when another lawyer hypothetically gave advice to Mr. Kelley.

The government's motion also ignores RPC 3.7's express limitations on imputed disqualification.  Prior to 2006, RPC 3.7 imputed advocate-witness conflicts to other lawyers in the same firm as the disqualified counsel; however, on September 1, 2006, the Supreme Court amended RPC 3.7 to conform to the counterpart model rule, which "dispenses with such imputed disqualification." *See* Wash. State Bar Ass'n, *Supreme Court Adopts "Ethics 2003" Amendments to Rules of Professional Conduct*, *available at* http://www.wsba.org/~/media/

---

[12] As noted above, Mr. McCallum has not entered an appearance in this case.  Accordingly, we do not address in this response whether Mr. McCallum provided any advice that the government claims could be disqualifying, because it is not reasonably necessary to do so, and therefore, DWT and LeSourd are obligated under RPC 1.6 to safeguard such confidential and privileged information, even as to the Court.  If Mr. McCallum enters an appearance in this case in the future, any issues relating to Mr. McCallum's potential conflicts can be explored at that time, and Mr. McCallum can clear up any confusion the government may have about the facts.

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 12
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Files/Resources_Services/Ethics/Ethics%202003/rpcarticle0706.ashx. The current version of RPC 3.7, which tracks with Model Rule 3.7, expressly recognizes that "[a] lawyer *may* act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by [RPC] 1.7 or [] 1.9." RPC 3.7(b) (emphasis added). *See* Strait Decl. ¶¶ V.B.1-5.

What is more, Mr. Bartlett and Mr. McCallum are not partners in the same firm. RPC 3.7 cannot possibly require disqualification of a trial counsel merely because a different lawyer from a different firm who also advises the same client could hypothetically be called to testify; such a rule would effectively deprive a criminal defendant of *any* counsel in the event the defendant chose to pursue an advice-of-counsel defense. This illogical result illustrates why disqualification under RPC 3.7(a) is not imputed to other lawyers representing the same client, and why the government's motion on this point should be denied. *See* Strait Decl. ¶V.B.5.

### 2. The Government's Unilateral Need to Obtain Testimony About the Purpose of the Retainer Payment Does Not Require Mr. Bartlett's Disqualification.

The government also suggests that disqualification may be warranted because it "believes it will be required to call some witness from Davis Wright Tremaine to testify that the [retainer payment] was transferred to be used for Kelley's benefit." Mot. at 13. On this point, the government has invented a paper tiger. Neither Mr. Kelley nor anyone else has ever suggested the retainer payment was transferred for any other purpose. Mr. Kelley intends to stipulate at trial to the fact that the retainer payment was made for the purpose identified by the government, if the government so requests. *See* Kelley Decl. ¶ 6. Moreover, Mr. Bartlett has repeatedly advised the government that the funds were for a retainer and that Mr. Kelley would stipulate to this undisputed fact. Bartlett Decl. ¶ 15.

RPC 3.7(a) carves out two exceptions to the advocate-witness disqualification rule that are relevant here. First, disqualification is not required when "the testimony relates to an uncontested issue," RPC 3.7(a)(1), because at that point, any "ambiguities in the dual role [of advocate and witness] are purely theoretical." RPC 3.7 cmt. [3]. Second, disqualification is

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 13
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1 not required when "the lawyer has been called by the opposing party and the court rules that the
2 lawyer may continue to act as an advocate." RPC 3.7(a)(4). In fact, comment 8 to RPC 3.7
3 recognizes the danger of disqualifying counsel based on an opposing party's intent to call the
4 lawyer as a witness:

> When a lawyer is called to testify as a witness by the adverse party, there is a risk that Rule 3.7 is being inappropriately used as a tactic to obtain disqualification of the lawyer. Paragraph (a)(4) is intended to confer discretion on the tribunal in determining whether disqualification is truly warranted in such circumstances.

8 RPC 3.7 cmt [8].

9 "[S]everal courts have made it clear that the advocate-witness rule was not designed to
10 permit a party to call an opposing attorney as a witness for the purpose of disqualifying him."
11 Richard E. Flamm, *Lawyer Disqualification: Disqualification of Attorneys and Law Firms*
12 233–34 (2d ed. 2014). Courts "will not tolerate attempts to invoke the rule for such a purpose;
13 and ... when a lawyer is to be called [by an opposing party], the court must take pains to
14 ascertain whether the challenged lawyer's testimony is truly necessary, or merely a fabrication
15 of [the] client's adversary." *Id.* Given Mr. Kelley's willingness to stipulate to the purpose of
16 the retainer payment, and given the undisputed nature of the issue, the government's unilateral
17 rejection of that stipulation for purposes of manufacturing an advocate-witness conflict could
18 not give rise to disqualification. *See* Strait Decl. ¶¶ III.3, V.B.4.

19 Moreover, the government proffers no reason why it could not rely on the testimony of
20 an attorney or employee of DWT other than Mr. Bartlett—if by some chance testimony about
21 DWT's receipt of retainer funds became necessary—thereby avoiding the advocate-witness
22 problem entirely. *See* RPC 3.7(b) (permitting testimony of another attorney at the advocate's
23 firm without requiring disqualification). *See* Strait Decl. ¶¶ III.3, V.B.4. The court should
24 decline the government's invitation to disqualify Mr. Bartlett based on the government's
25 unnecessary and transparent attempt to manufacture a conflict of interest, which in any event
26 does not require disqualification.

27

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 14
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

### 3. Mr. Bartlett's Prior Representation of Mr. Kelley's Wife Does Not Require His Disqualification.

Finally, the government argues that DWT's prior representation of Diane Kelley, Troy Kelley's wife, might create a conflict with its current representation of Mr. Kelley, warranting Mr. Bartlett's disqualification under RPC 1.9.[13]  On this point, the government concedes that it "is not aware of any specific conflict that is likely to arise from that representation."  Mot. at 14.  Nonetheless, armed with nothing but the fact of the prior representation, the government insists that further inquiry is needed.

As a threshold matter, the government's suggestion of a theoretical conflict falls well short of its burden of showing that disqualification is warranted.  *See Best v. BNSF Ry. Co.*, 2008 WL 149137, *7 (E.D. Wash. Jan. 10, 2008) (denying disqualification motion where former client failed to identify the "nature" of the confidential information for the Court to conduct its "analysis [of] the scope of the facts of the former representation").  As the party seeking disqualification, the government must make an additional showing that, with respect to a "core issue," Mr. Bartlett's representation of Mr. Kelley is ***materially adverse to his former client's interest*** such that it "implicates 'confidences or secrets'" divulged to the law firm. *FMC Techs., Inc. v. Edwards.*, 420 F. Supp. 2d 1153, 1161 (W.D. Wash. 2006) (Coughenour, J.); RPC 1.9 cmt. 8 ("Paragraph (c) provides that information acquired by the lawyer in the course of representing a client may not subsequently be…*revealed* by the lawyer to the *disadvantage* of the client.") (emphasis added).  Courts do not disqualify counsel under RPC 1.9(a) unless the conflict involves adversity as to a "central issue in both cases." *Oxford Sy.s, Inc. v. CellPro, Inc.*, 45 F. Supp. 2d 1055, 1061 (W.D. Wash. 1999) (Zilly, J.).  The government identifies no such "central issue" here.

---

[13] RPC 1.9(a) prohibits a lawyer "who has formerly represented a client in a matter [from] represent[ing] another client in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client," absent the informed written consent of the former client.  RPC 1.9(c) generally prohibits a lawyer from using or revealing information obtained in prior representation to the disadvantage of a former client.

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 15
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

In any event, Mr. Bartlett's current representation of Mr. Kelley fully comports with his obligations under RPC 1.9 concerning his prior representation of Mrs. Kelley. As set forth in his declaration, Mr. Bartlett was retained to represent Mrs. Kelley in connection with an ongoing tax investigation; however, soon after undertaking that representation, Mr. Bartlett was advised by the government that Ms. Kelley was not a subject or target of the investigation. Bartlett Decl. ¶ 2–3. As of that point in time, Mr. Bartlett had not met Ms. Kelley, had not spoken with her (either in person or on the phone), and had not corresponded with her beyond the original engagement letter. *Id.* There was no exchange of information, and thus no opportunity to acquire any confidential information. *Id.* ¶ 2–3, 12. Nor is Mr. Bartlett's prior representation of Ms. Kelley "materially adverse" to his current representation of Mr. Kelley. Finally, Ms. Kelley has provided informed written consent to Mr. Bartlett's continued representation of her husband, waiving any potential conflict that could result from his prior representation of her. *Id.* ¶ 14. This eliminates any possibility of a conflict of interest that could require Mr. Bartlett's disqualification. *See* Strait Decl. ¶¶ III.4, V.C.1.

**D.     No Inquiry, Disclosure to the Government, or Further Briefing Is Necessary**

In view of the above, the Court should decline the government's novel suggestion that the Court conduct an inquiry and then "provide the parties the results of the inquiry, following which the parties should be permitted to brief the effect of any conflicts upon defense counsel's continued representation." Mot. at 2:1-2. Such a procedure is unwarranted and improper. First, as this response demonstrates, the government's speculation on alleged disqualifying advice provided by Mr. Bartlett or DWT is simply unfounded and untrue. This alone should end any need for any inquiry, disclosures, or further briefing as suggested by the government. Second, none of this response or its accompanying declarations have been redacted, so the government can file its reply brief with whatever additional argument it might have (although logic dictates it should abandon its effort to second-guess Mr. Kelley's choice of counsel now that it has been made aware of the facts). There is thus no need for further briefing. Third, and finally, the government is entitled to no further disclosures that would give it any greater

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 16
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  insight into defense trial strategies than it has already unfairly gained just by creating the need

2  for this response to its motion.  The Court should simply deny the government's motion

3  without further ado, if the government does not withdraw its motion first.

## IV.    CONCLUSION

Mr. Bartlett and DWT have no conflict of interest—actual, possible, or theoretical—in his continued representation of Mr. Kelley.  The government's motion should therefore be denied. No further inquiry is necessary, and the Court should decline the government's request for further briefing or argument that could serve no useful purpose, other than perhaps generating further press reports prejudicial to Mr. Kelley.

DATED this 5th day of June, 2015.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Defendant Troy X Kelley*

By: *s/ Jeffrey B. Coopersmith*
    Mark N. Bartlett, WSBA #15672
    Jeffrey B. Coopersmith, WSBA #30954
    James Harlan Corning, WSBA #45177
    1201 Third Avenue, Suite 2200
    Seattle, WA 98101
    Telephone:    (206) 622-3150
    Facsimile:    (206) 757-7700
    E-mail:       markbartlett@dwt.com
                  jeffcoopersmith@dwt.com
                  jamescorning@dwt.com

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 17
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

EXECUTED at Seattle, Washington this 5th day of June, 2015.

s/ *Jeffrey B. Coopersmith*
Jeffrey B. Coopersmith, WSBA No. 30954

DEF'S RESP. TO GOV'T'S MOT. FOR INQUIRY
RE: POTENTIAL CONFLICTS OF INTEEREST
(No. 3:15-cr-05198-RBL) – 18
DWT 26963107v7 0098392-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700