THE HONORABLE ROBERT B. LEIGHTON

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>TROY X. KELLEY,<br><br>　　　　　　　　　Defendant. | Case No. 3:15-cr-05198-RBL<br><br>DEFENDANT'S MOTION TO CONSOLIDATE PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING PRETRIAL SEIZURE OF ASSETS<br><br>**NOTED FOR:**<br>**FRIDAY, OCTOBER 9, 2015** |

## I.  INTRODUCTION

On September 2, 2015, the United States Attorney's Office obtained a seizure warrant from a U.S. Magistrate Judge in Seattle to confiscate nearly one million dollars that had been deposited into an attorney trust account at the law firm that formerly represented Mr. Kelley. This appears to be the first instance (and, if not, one of the very rare instances) in which the U.S. Department of Justice has seized funds in a lawyer's trust account in this District. It cannot be lost on federal prosecutors that a distinct tactical advantage is gained by depleting their investigative target's resources, which might otherwise be available to defend the prosecution. Nothing could more poignantly demonstrate this than the government's taking of money from the hands of a criminal defendant's lawyers.

Prosecutors often justify seizing property without a hearing by saying that a criminal defendant should not be able to use the proceeds of crime to defend his case. Of course, that is

DEFENDANT'S MOTION TO CONSOLIDATE
AND FOR EVIDENTIARY HEARING - 1

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

true and unassailable, but the whole point of this prosecution is to determine whether the funds in question are indeed proceeds of any crime.  Here, the government claims to have traced "criminal proceeds" to the law firm trust account by filing an *ex parte* affidavit from a Special Agent of the Federal Bureau of Investigation, Michael Brown ("Brown Affidavit"),[1] who in turn relies on what was an allegedly extensive accounting analysis performed by an unnamed "FBI forensic accountant."  The Brown Affidavit says that the FBI accountant performed a tracing analysis, but it fails to specify with any level of detail how the analysis was performed—it simply asserts that the tracing was done and that it shows that $908,000 in the law firm's trust account are criminal proceeds.  Brown Affidavit ¶¶ 83, 93–100.  No spreadsheets detailing the movement of funds or other backup information supports the unnamed FBI accountant's conclusions.  *Id.*  The highly conclusory nature of the FBI accountant's report leaves serious room for doubt whether there is an adequate basis to rely on it.  This is particularly true here where, as here, the government's tracing analysis presented to the grand jury contradicts the unnamed FBI accountant's tracing of assets.  Calfo Decl. ¶ 3, Exh. B.

What is more, a full two paragraphs of the Brown Affidavit are devoted to explaining the potential credibility issues inherent in this mystery FBI accountant's background.  Brown Affidavit ¶¶ 74–75.  Agent Brown discloses that the very accountant who did the analysis essential to justifying the seizure is also currently being audited by the IRS for unlawfully taking thousands of dollars in deductions.  Separately, he is also involved in a criminal investigation relating to payments made by his former employer that are being scrutinized as potential acts of tax evasion. This FBI accountant's suspect background, coupled with his conclusory allegations, which are themselves contradicted by other government tracing

---

[1] The Brown Affidavit is attached to the contemporaneously filed Declaration of Angelo J. Calfo in Support of Motion To Consolidate Proceedings And For Evidentiary Hearing Regarding Pretrial Seizure of Assets ("Calfo Decl.") ¶ 2, Exh. A.

DEFENDANT'S MOTION TO CONSOLIDATE
AND FOR EVIDENTIARY HEARING - 2

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

analyses, demonstrate why a hearing is necessary to determine whether the government has properly seized the trust account funds.

In any event, the Ninth Circuit *requires* the government to promptly arrange for and conduct an adversarial evidentiary hearing justifying its seizure. *United States v. Crozier*, 777 F.2d 1376 (9th Cir. 1985). This hearing is required regardless of how weak or strong the government's case for pretrial seizure appears to be based on an uncross-examined affidavit, or based on the allegations contained in an indictment. As *Crozier* held, there would be serious due process concerns inherent in allowing the government to freeze a criminal defendant's assets prior to trial without a hearing at which its evidence could be subject to cross-examination. Here, there are substantial reasons to believe that the government will be unable to prove traceability. Mr. Kelley requests that the Court promptly schedule a *Crozier* hearing.

## II.     BACKGROUND

Mr. Kelley was charged by indictment on April 15, 2015, Dkt. No. 1; on September 3, 2015, the government returned a Superseding Indictment. Dkt. No. 38. On September 2, 2015, one day before filing the Superseding Indictment, the government applied for a warrant to seize property subject to forfeiture in a separate, miscellaneous proceeding in Seattle based on the Brown Affidavit. Case No. 2:15-mc-00129, Dkt. No. 1. A warrant was issued the same day and was returned executed on September 8, 2015. *Id.*, Dkt. No. 3. Pursuant to the warrant, the government seized $908,397.51 from a trust account held by Mr. Kelley's former counsel, which is also alleged to be forfeitable in the Superseding Indictment. Dkt. No. 38 ¶ 159(a).

According to the Superseding Indictment and the Brown Affidavit, Mr. Kelley allegedly retained fees collected by his company, to which he was not entitled, from 2006 to 2008. *See* Dkt. No. 38 ¶ 105. He is not charged with theft, but is charged with possession and concealment of allegedly stolen property from 2008 to 2012. The government alleges that on June 27, 2008, Mr. Kelley transferred $3,634,673 to a Vanguard bank account in the name of a

DEFENDANT'S MOTION TO CONSOLIDATE
AND FOR EVIDENTIARY HEARING - 3

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

company called Berkeley United; according to the government, $1,463,171 constituted tainted proceeds. Brown Affidavit ¶ 83. The Brown Affidavit, but not the Superseding Indictment, refers to the transfer as money laundering; Mr. Kelley is not charged criminally with money laundering based on this June 27, 2008, transfer. *See id.* ¶ 84.

Several years later, in 2011, Mr. Kelley settled a civil lawsuit regarding the fees and paid $1,050,000 from the Berkeley United Vanguard account. *Id.* ¶ 93. Then, in each of June 2011 and January 2012, the government alleges that Mr. Kelley withdrew approximately $245,000, paying taxes on the income. *Id.* ¶¶ 94–96. In February 2012, Mr. Kelley allegedly transferred $2,090,818 from the Berkeley United Vanguard account to a Vanguard account in the name of Blackstone International, Inc. *Id.* ¶ 96. He allegedly made three more withdrawals of $245,000 from the Blackstone Vanguard account in 2013, 2014, and 2015. *Id.* ¶ 97. The five $245,000 withdrawals are charged in the Superseding Indictment as money laundering, but the Brown Affidavit does not rely on them as such. *See* Dkt. No. 38 ¶¶ 126–135.

Mr. Kelley allegedly drew down the Blackstone Vanguard account on March 26, 2015, by paying taxes in the amount of $447,421 and transferring $908,397.51 to his then-counsel's trust account. Brown Affidavit. ¶¶ 98–99. The government has now seized the $908,397.51 and, incredibly, alleges that the $447,000 paid to the IRS is also forfeitable. Dkt. No. 38 ¶ 159(b).

### III.   DISCUSSION

**A.   The Government's Power to Seize Property Prior to a Criminal Trial Is a Drastic Remedy That Should be Carefully Scrutinized.**

The pretrial restraint or seizure of property belonging to a defendant who has only been accused of a crime (and indeed is still presumed to be innocent) is a "drastic remedy." *United States v. Ripinksy*, 20 F.3d 359, 365 (9th Cir. 1994). The Ninth Circuit has expressed misgivings about the far-reaching consequences that such a "powerful weapon" may have in

DEFENDANT'S MOTION TO CONSOLIDATE
AND FOR EVIDENTIARY HEARING - 4

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

the hands of the government, warning that "[s]uch restraints can cripple a business and destroy an individual's livelihood." *Id.* And the Supreme Court has characterized pre-judgment restraint of private assets as a "nuclear weapon of the law." *Grupo Mexicano de Desarrollo, S.A., v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 332 (1999) (internal quotation marks omitted). In light of the severe, punitive nature of the pretrial restraint and seizure statutes, the government should scrupulously observe the substantive and procedural requirements set forth in the statutes and case law.

**B.     To Properly Scrutinize the Government's Seizure of Assets, the Court Should Consolidate the Seizure Warrant and Criminal Case.**

The government has seized property under a miscellaneous action filed in Seattle which relates to the same property and factual subject matter as the property the government claims is forfeitable in the Superseding Indictment. In fact, pursuant to the warrant, the government seized property from a bank account specifically enumerated in the forfeiture allegation of the Superseding Indictment. It makes sense to consolidate these different proceedings before the same district judge and under the same case file. Doing so would avoid the potential for inconsistent rulings and further the goal of judicial economy. *See, e.g.*, *United States v. Certain Real Property*, 972 F.2d 136, 136 (6th Cir. 1992) (district court can consolidate criminal and civil forfeiture actions brought by United States against defendant's property); *United States v. 228 Acres of Land and Dwelling*, 916 F.2d 808, 810 (2d Cir. 1990) (permitting the consolidation of two civil forfeiture proceedings against the same defendant but involving different property); *United States v. Real Prop. Located at 1808 Diamond Springs Rd.*, 816 F. Supp. 1077, 1085 (E.D. Va. 1993) (consolidating criminal and civil forfeiture actions); *United States v. Sharir*, 755 F. Supp. 77, 78 (S.D.N.Y. 1990) (defendant was entitled to adversarial hearing on probable cause where government first seized assets in civil cases; assets were later named in indictment and civil and criminal cases were consolidated). By consolidating the different proceedings the government has brought in two different divisions of this District,

DEFENDANT'S MOTION TO CONSOLIDATE
AND FOR EVIDENTIARY HEARING - 5

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

this Court can properly manage and scrutinize all the government's actions in seizing and seeking to forfeit the trust account funds held by Mr. Kelley's former lawyers.[2]

### C. The Government's Power to Seize Property Prior to a Criminal Trial Is Limited to Property Traceable to Specified Federal Criminal Violations.

The Supreme Court in its last term held that property may be forfeited pretrial where there is probable cause to conclude "(1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." *Kaley v. United States*, 134 S. Ct. 1090, 1095 (2014). The "requisite connection" to property is typically shown by proof that the seized funds are the direct proceeds of—or are "traceable to"—the specified crime. In other words, in order to seize property pretrial, the government must not only show probable cause to believe that a specified crime has been committed (such as money laundering or mail or wire fraud), but also that the property seized is sufficiently connected to or traceable to that crime. *Ripinksy*, 20 F.3d at 365.

It follows that, prior to trial, the government is *not* permitted to seize assets that are *not* traceable to criminal activity. *Id.* Such non-traceable assets which the government may not seize are often referred to as "substitute assets"—or, in other words, assets which may be available *after* any forfeiture conviction to satisfy any judgment the government may obtained (and act as a "substitute" for actual criminal proceeds). Consequently, to the extent this Court determines that the government's seizure of funds via the Brown Affidavit is of "substitute" rather than "traceable" assets, the government must be directed to release the funds to Mr. Kelley. *Id.*

### D. Ninth Circuit Law Requires a Prompt, Adversarial Evidentiary Hearing at Which The Government Must Prove Probable Cause.

The law relating to pretrial seizure of forfeitable assets is unsettled and varied among

---

[2] The government could have avoided separate, parallel proceedings simply by seeking a restraining order from this Court based on the allegations in the Superseding Indictment. It chose not to ask the Court for that relief but instead chose to proceed before a different judge in Seattle. The government has not explained its decision in this regard, which was obviously strategic in nature.

DEFENDANT'S MOTION TO CONSOLIDATE
AND FOR EVIDENTIARY HEARING - 6

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

the different judicial circuits in the country. However, in the Ninth Circuit, the precedent has not changed for more than twenty-five years. In *United States v. Crozier*, the court issued two written opinions considering the due process implications of *ex parte*, pretrial restraining orders in criminal cases. 777 F.2d 1376 (9th Cir. 1985); 674 F.2d 1293, 1297 (9th Cir. 1982). Both opinions concluded that requiring a defendant whose assets have been so restrained to wait until trial to challenge the restraint would deprive him of his Fifth Amendment due process rights. 777 F.2d at 1383–84; 674 F.2d at 1297. Accordingly, in its second opinion, the court held the seizure and restraint provisions of 21 U.S.C. § 853—the criminal equivalent of 18 U.S.C. § 981(a), under which the trust account funds were seized—to be unconstitutional to the extent that they fail to provide defendants with an opportunity to challenge such restraints prior to trial. 777 F.2d at 1384.

To remedy the due process deficiency, the *Crozier* court held that pre-trial orders restraining a defendant's assets were to be treated as preliminary injunctions, governed by Rule 65 of the Federal Rules of Civil Procedure. *Id.* Rule 65 requires that a party who obtains a temporary restraining order *ex parte* must move promptly thereafter to convert the order into a preliminary injunction and must demonstrate its entitlement to the injunction at an evidentiary hearing. Accordingly, when the government obtains an *ex parte* order restraining the assets of a criminal defendant, *Crozier* requires that the district court hold a prompt hearing under Rule 65 to determine whether the preliminary order should be extended. *See also United States v. Roth*, 912 F.2d 1131, 1133–34 (9th Cir. 1990) (reaffirming *Crozier* and requiring Rule 65 hearing following pretrial restraint of assets).[3]

---

[3] While *Crozier* and *Roth* provided for hearings in the context of pretrial asset restraining orders, their reasoning applies equally to pretrial asset seizures. Seizure is a more drastic remedy than restraint. *See* 21 U.S.C § 853(f) (providing for issuance of a seizure warrant if the court determines that a restraining order "may not be sufficient to assure the availability of the property"); *U.S. v. Miller*, 26 F. Supp. 2d 415, 432 (N.D.N.Y. 1998) (contrasting seizure to "the less drastic remedy of restraint"). The protections available to defendants should therefore be at least as strong, and nothing in *Crozier* or *Roth* restricts their applicability. The Ninth Circuit provides the safeguard of an evidentiary hearing for defendants whose property has been taken away, and Mr. Kelley is entitled to such a hearing.

DEFENDANT'S MOTION TO CONSOLIDATE
AND FOR EVIDENTIARY HEARING - 7

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

In other circuits, there are various burdens and requirements imposed on a defendant to successfully obtain a pretrial hearing. Some circuits require that the defendant show that he needs the seized money for living expenses or to pay for counsel prior to trial. The Ninth Circuit is unique in that it does not require a defendant to make a preliminary showing before being entitled to a hearing under *Crozier* and *Roth*. *See U.S. v. Holy Land Found. for Relief & Dev.*, 493 F.3d 469, 475–76 (5th Cir. 2007) (contrasting *Roth* with the Eleventh Circuit's rule that a hearing is never required, and concluding that in the Fifth Circuit, the court may grant a hearing upon weighing the private interest that will be affected, the risk of an erroneous deprivation of such interest, the probable value of additional safeguards, and the government's interest).

In sum, *Crozier* and *Roth* hold that (1) a prompt, adversarial hearing under the provisions of Federal Rule of Civil Procedure 65 is required; and (2) the government bears the burden of proof at the hearing to establish probable cause that the federal crime purporting to form the basis of the seizure occurred, and that the seized asserts are traceable to that crime (and are not substitute assets). Neither *Crozier* nor *Roth* requires the defendant to show "need" for the assets in order to obtain the required hearing.

**E.    The Supreme Court's Decision in *Kaley* Permits the Government to Rely on the Grand Jury's Indictment to Establish Probable Cause That a Crime Was Committed But Not To Establish that the Seized Asserts are Traceable**.

In *Kaley*, the Supreme Court modified the Ninth Circuit's *Crozier* decision in one respect. *Crozier* requires a hearing under Rule 65 to justify (1) the government's pretrial seizure based on probable cause that an offense permitting forfeiture was committed and (2) that the property seized is traceable to that offense. In *Kaley*, the Supreme Court held that, to the extent the government relies on an indictment—and, therefore, a finding by a grand jury—to show probable cause to believe the offense permitting forfeiture was committed, it does not

DEFENDANT'S MOTION TO CONSOLIDATE
AND FOR EVIDENTIARY HEARING - 8

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

have to re-litigate that probable cause issue at the pretrial evidentiary hearing. 134 S. Ct. at 1094. Whether the government is entitled to rely on the grand jury's probable cause determination depends on the theory the government espouses at the evidentiary hearing to justify its seizure of assets. If it relies on the probable cause theory set forth in the indictment, then it will be excused by the *Kaley* decision of proving probable cause at the evidentiary hearing. However, if it relies on some other theory not contained in the Superseding Indictment to support its tracing theory, then the government will not be able to rely on *Kaley* and the requested hearing will need to address probable cause both as to the commission of the alleged crime permitting forfeiture and the government's tracing theory.

**F.    The Government Will be Unable to Prove Probable Cause That the Seized Assets are Traceable**.

While it is not Mr. Kelley's burden to establish probable cause or prove anything to obtain a *Crozier* hearing, there are patently obvious grounds to question whether the government will be able to show probable cause that the seized funds can be traced to the alleged criminal activity.

**1.    The seized funds are not traceable to the alleged possession and concealment of stolen property.**

Simple arithmetic shows that the seized funds are not traceable to the only allegation in the Brown Affidavit actually charged in the Superseding Indictment: Possession and concealment of stolen property.[4] The Brown Affidavit states that on June 27, 2008, Mr. Kelley transferred $3,634,673 to a Vanguard bank account in the name of a company called Berkeley United, $1,463,171 of which represented funds that Kelley had allegedly failed to refund to borrowers. Brown Affidavit ¶ 83. The Brown Affidavit, but not the Superseding Indictment, refers to this transfer as money laundering. *See id.* ¶ 84. Since then, the government alleges

---

[4] Possession and concealment of stolen property, on its own, does not allow the government to seize property; the Brown Affidavit only raises this allegation as a predicate to the money laundering allegation. *See* Brown Affidavit at 25:14–16.

DEFENDANT'S MOTION TO CONSOLIDATE
AND FOR EVIDENTIARY HEARING - 9

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

that $1,050,000 was withdrawn from the Berkeley United account as part of a civil settlement on May 3, 2011, *id.* ¶ 93, $245,030 was withdrawn on June 3, 2011, *id.* ¶ 95, and $245,000 was withdrawn on January 6, 2012, *id.* ¶ 96.  Under the government's "last-in-first-out" accounting principle, *id.* ¶ 11, this means that the allegedly tainted proceeds ($1,463,171) were completely gone from the account by January 6, 2012—a fact that goes completely unrecognized in the Brown Affidavit.  This calculation is confirmed by the government's own grand jury exhibit stating that, after the $1,050,000 settlement payment, only $412,876 ($1,463,171 minus $1,050,000, give or take some interest or other amounts not explained by the government) in "unlawfully retained money" remained in the Berkeley United Vanguard account.  Calfo Decl. ¶ 3, Exh. B.  The Superseding Indictment itself also supports this calculation, given that it charges Mr. Kelley with possession and concealment of stolen property only from 2008 through January 2012.  See Dkt. No. 38 ¶ 105.

Therefore, as of January 6, 2012, no tainted proceeds remained in the Berkeley United Vanguard account.  The Brown Affidavit states that on February 1, 2012, Mr. Kelley transferred $2,090,818 from the Berkeley United Vanguard account to the Blackstone Vanguard account.  Brown Affidavit ¶ 96.  In each of 2013, 2014, and 2015, Mr. Kelley allegedly withdrew $245,000 from the Blackstone Vanguard account.  *Id.* ¶ 97.  On March 26, 2015, Mr. Kelley allegedly wrote a check to the IRS for $447,421 and transferred $908,397.51 to the law firm trust account held by Mr. Kelley's former counsel.  *Id.* ¶¶ 98–99.  But since the Blackstone Vanguard account never contained tainted proceeds, the $908,397.51 could not possibly be traceable to illegal activity.  Under the Ninth Circuit's *Ripinsky* decision, which clearly states that legitimately-derived funds may not be seized pretrial, the $908,000 should be returned to Mr. Kelley.  20 F.3d at 365.

### 2. The Brown Affidavit's money laundering allegation will not save the government's tracing allegations.

The money laundering theory espoused in the Brown Affidavit—but which was not

DEFENDANT'S MOTION TO CONSOLIDATE
AND FOR EVIDENTIARY HEARING - 10

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1  included in the Superseding Indictment—does not justify the government's seizure of the funds
2  in the law firm trust account.  The government cannot get around the fact that, under its tracing
3  theory set forth in the Brown Affidavit, none of the $908,000 transferred from that account to
4  the law firm trust account were tainted funds.

5  The government must therefore resort to a "commingling" theory—that somehow Mr.
6  Kelley furthered his money laundering scheme by (1) commingling tainted with non-tainted
7  funds into an account; (2) transferring all allegedly tainted funds out of the account; and (3)
8  *after all tainted funds had been depleted from the account*, transferring funds the government
9  must concede are untainted.  Brown Affidavit ¶ 84.  This theory, however, will be insufficient
10 to demonstrate probable cause for at least two reasons.  *First*, "[C]ourts agree innocent funds
11 are not forfeitable simply because they have been commingled with tainted funds."  *United
12 States v. Contents in Account No. 059-644190-69*, 253 F. Supp. 2d 789, 799 (D. Vt. 2003).
13 Where the government alleges that the transfer of funds from one account to another
14 constituted money laundering, the mere inclusion of innocent funds does not make them
15 subject to forfeiture because laundering would have occurred even without those funds.  *Id.* at
16 800 (transfer did not contaminate the untainted funds because "the money laundering would
17 have been equally as effective if it had not involved any untainted funds but merely the transfer
18 of LCCP funds to accounts in Capoccia's personal control").  To establish probable cause, the
19 government must make some showing that the commingling of non-tainted funds was done
20 with the intent to conceal the tainted funds and that the non-tainted funds in fact furthered that
21 concealment.  The Brown Affidavit makes no such showing.

22 *Second*, the alleged money laundering set forth in the Brown Affidavit, pursuant to
23 which the attorney trust account was seized, is neither charged nor chargeable because it is
24 based on alleged money laundering violations for which the statute of limitations has passed.
25 The Brown Affidavit justifies pretrial seizure based solely on the June 27, 2008, transfer of

DEFENDANT'S MOTION TO CONSOLIDATE
AND FOR EVIDENTIARY HEARING - 11

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

$3,634,673 into the Berkeley United Vanguard account, describing that transfer as money laundering even though it occurred more than seven years ago.  Brown Affidavit ¶ 84.  However, the forfeiture statute on which the government's seizure was based, 18 U.S.C. § 981(a)(1)(A), provides that property "involved in a transaction or attempted transaction *in violation of* section 1956 [money laundering]" is subject to forfeiture.  18 U.S.C. § 981(a)(1)(A) (emphasis added).  The government does not—and cannot—charge Mr. Kelley with money laundering for the alleged 2008 transfer, which is outside of the statute of limitations.  *See* 18 U.S.C. § 3282(a) (5-year statute of limitations).  Where a defendant could not be found guilty of an underlying crime, there is no basis on which to seek forfeiture.  *See* 18 U.S.C. § 981(a)(1)(A) (requiring a "violation" of the money laundering statute).

> **3.     The government's tracing analysis is highly suspect, given the FBI accountant's prior conduct.**

Finally, the FBI accountant tasked with conducting the tracing analysis is, by the government's own admission, of suspect credibility.  He is currently being audited by the IRS in connection with his personal 2012 tax filing because the IRS challenged more than $25,000 of claimed deductions—the very act for which Mr. Kelley is charged in the Superseding Indictment.  Brown Affidavit ¶ 74.  As if that wasn't enough, the same accountant is currently involved in a criminal investigation into the accountant's former employer.  *Id.* ¶ 75.  The accountant, as a former comptroller at a Seattle firm, issued payments to an individual indicted for tax evasion, despite warnings by a lawyer that direct payments to that individual might be illegal.  *Id.*  Given that the accountant responsible for tracing the relevant funds is personally dealing with <u>two</u> outstanding government actions that call into question the accountant's judgment on matters of tax evasion and deductible expenses, a hearing is necessary to determine whether the tracing analysis proffered by the government is legitimate or created by someone seeking to curry favor with government officials because of his own involvement in government civil and criminal investigations.  It is noteworthy on this point that the Brown

DEFENDANT'S MOTION TO CONSOLIDATE
AND FOR EVIDENTIARY HEARING - 12

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Affidavit, which is highly conclusory in describing the FBI accountant's work, does not attach the spreadsheets (or other detail) created by the FBI accountant to support the tracing analysis the accountant performed.

## IV.  CONCLUSION

For the foregoing reasons, Mr. Kelley requests that the court consolidate this action with the miscellaneous proceeding for the seizure warrant and schedule an evidentiary hearing to determine whether the government has probable cause to seize $908,397.51 in his former counsel's trust account.

DATED this 29th day of September, 2015.

CALFO HARRIGAN LEYH & EAKES LLP

By  *s/Angelo J. Calfo*
      Angelo J. Calfo, WSBA #27079
      999 Third Avenue, Suite 4400
      Seattle, WA  98104
      Telephone:  (206) 623-1700
      Email:  angeloc@calfoharrigan.com

DEFENDANT'S MOTION TO CONSOLIDATE
AND FOR EVIDENTIARY HEARING - 13

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Andrew C. Friedman | andrew.friedman@usdoj.gov |
| Arlen R. Storm | arlen.storm@usdoj.gov |
| Katheryn Kim Frierson | katheryn.k.frierson@usdoj.gov |
| Richard E. Cohen | richard.e.cohen@usdoj.gov |

*s/Susie Clifford*

DEFENDANT'S MOTION TO CONSOLIDATE
AND FOR EVIDENTIARY HEARING - 14

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717