The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>TROY X. KELLEY,<br><br>        Defendant. | NO. CR15-5198 RBL<br><br>GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING PRETRIAL SEIZURE OF ASSETS |

## I.    <u>INTRODUCTION</u>

Defendant Troy X. Kelley is not entitled to a pre-trial evidentiary hearing to challenge the government's seizure of $908,397.51 pursuant to a duly-obtained civil seizure warrant.   Kelley's reliance upon two Ninth Circuit cases, *United States v. Crozier,* 777 F.2d 1376 (9th Cir. 1985), and *United States v. Roth*, 912 F.2d 1131 (9th Cir. 1990), which Kelley mistakenly claims establish his right to such a hearing, is fundamentally flawed for two reasons.  First, Kelley ignores the fact that, unlike the situation in the cases on which he relies, where defendants were challenging pretrial restraining orders issued in criminal cases, the money at issue in this case was seized pursuant to a civil seizure warrant.  Accordingly, Kelley's rights are governed by the procedural rules governing civil forfeitures, which do not contemplate the type of hearing

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 1

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   that Kelley is seeking.  Instead, Kelley's claims to the money will be provided ample
2   hearing in the course of a well-established civil process that will be initiated when then
3   government soon files its civil forfeiture action.

4           Second, Kelley cannot rely on cases holding that he may be entitled to a hearing in
5   order to contest a seizure of assets necessary for him to retain counsel to represent him.
6   Kelley has not even alleged that he requires the assets seized in order to retain counsel of
7   his choice to represent him (nor could Kelley credibly do so given his substantial other
8   assets).

9           Finally, Kelley's motion asks the Court to "consolidate" the seizure-warrant
10  proceeding with this criminal case.  Kelley's request ignores the fact that there currently
11  is no proceeding to "consolidate."  When the Government files a civil forfeiture action
12  against the seized money -- as it will in the near future -- there will be such a proceeding.
13  The Government will file a notice of related case, and would welcome the transfer of the
14  civil forfeiture action to this Court (although "consolidation" still would not be
15  appropriate, since the actions are governed by different rules).

## II.  FACTS

**A.  The Criminal Case Against Kelley**

18          Defendant, Troy X. Kelley, currently is charged by a Superseding Indictment with
19  a series of crimes stemming from his fraudulent operation of a business, United National,
20  LLC, d/b/a Post Closing Department (PCD), and from his subsequent efforts to hide, and
21  to avoid paying taxes on, the proceeds of his fraud.

22          As set forth in the Superseding Indictment, PCD provided "reconveyance-tracking
23  services" to escrow companies.  Superseding Indictment ¶ 5.  Individuals who borrow
24  money to purchase a home generally are required to transfer title to the home to a trustee,
25  who holds that title on behalf of the lender, pursuant to a deed of trust, to secure
26  repayment of the loan.  *Id.* ¶ 6.  When the underlying loan is repaid in full, the trustee
27  transfers title back to the borrower by executing a deed of trust, which is recorded in
28  public land records.  This process is called "reconveyance."  *Id.*

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 2

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

During the years leading up to 2008, escrow companies that facilitated real estate closings generally collected $100 to $150 from borrowers, at the time of closing of a subsequent transaction in which the borrowers sold or refinanced a property, to ensure that the escrow companies held sufficient funds to cover necessary costs of reconveyance, including paying any fees charged by trustees or county recording offices. *Id.* ¶ 8.   Kelley represented to escrow companies that PCD would take custody of the entire fee paid by borrowers, and that it would (i) track reconveyances for the escrow companies for a flat fee of $15 or $20 per reconveyance, (ii) pay any necessary trustee fees and county recording fees, and (iii) refund any remaining unused moneys to borrowers.  *Id*. ¶¶ 15-16, 33-35.

The Superseding Indictment alleges that, because major lenders processed the vast majority of reconveyances, PCD generally was not required to pay any trustee fees or county recording fees.  *Id.* ¶ 19, 29.   Instead of returning unused reconveyance fees to borrowers, however, Kelley and PCD kept the money, all the while continuing falsely to represent that PCD was charging a flat fee of only $15 or $20 for its work.  *Id.* ¶¶ 21-25, 40-42.  Specifically, PCD received reconveyance tracking fees from two escrow companies – Fidelity National Title and Old Republic Title -- in an amount designed to cover trustee and county-recording fees, as well as PCD's own $15 or 20 fee, in approximately 27,280 cases.  *Id.* ¶¶ 29, 45.  Although PCD paid trustee and county-recording fees in no more than 1033 of those cases, PCD issued refund checks to no more than 89 borrowers, rather than to the tens of thousands of borrowers to whom it should have issued refund checks.  *Id.* ¶¶ 30, 46.

The Superseding Indictment further alleges that, because PCD was not refunding unused fees that should have been refunded, PCD accumulated large balances in the bank accounts that held the money.  *Id.* ¶¶ 31, 47.  In 2008, after class action lawsuits were filed against escrow companies seeking the return of unused reconveyance fees, Kelley rapidly transferred the money that he had failed to refund through a series of bank

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 3

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

accounts in different names.  *Id.* ¶¶ 62-67.   Thus, within less than a month, Kelley transferred more than $3.6 million:

> (1) to a newly-opened account in the name of United National at Wells Fargo Bank, *id.* ¶ 63;
>
> (2) to a newly-opened account in the name of United National at U.S. Bank, *id.* ¶ 64;
>
> (3) to a newly-opened account in the name of Blackstone International, Inc. (an S Corporation owned by Kelley that held a majority interest in United National), at Nevada State Bank in the State of Nevada, *id.* ¶ 65.
>
> (4) to a newly-opened account held at in the name of Berkeley United, LLC (itself a newly-established corporation 99%-owned by Wellington Trust, a newly-established Belizean trust controlled by Kelley), at Vanguard in the State of Pennsylvania, *id.* ¶¶ 66-67.

The Superseding Indictment alleges that Kelley and PCD failed to refund to borrowers or to Fidelity and Old Republic a total of at least $2,964,679.  *Id.* ¶ 68.  It further alleges that at least $1,618,744 of this money was included in the money that Kelley transferred to the Blackstone International account at the Nevada State Bank, and that at least $1,463,171 of the money was included in the money that Kelley transferred to the Berkeley United account at Vanguard.  *Id.*

In 2011, Kelley resolved the last piece of litigation against him, a lawsuit brought against him by Old Republic, and paid Old Republic $1,050,000 drawn from the Berkeley United account at Vanguard.  *Id.* ¶ 83.  Following that settlement, Kelley began withdrawing $245,000 annually from the remaining money that he had transferred to Vanguard.  *Id.* ¶¶ 84-85, 89, 102.  Kelley transferred this money to accounts in the name of Blackstone International and reported the money as current income on tax returns that he filed for Blackstone International.  *Id.* ¶¶ 84-86, 89-90, 102.  Kelley subsequently told

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 4

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   IRS Special Agents that his company was continuing to earn this income by performing

2   work on old reconveyance files.  *Id.* ¶ 93.

3          Kelley's established pattern of annual withdrawals from the Vanguard account

4   suddenly changed, however, after a criminal search warrant was executed at his home on

5   March 16, 2015.   On March 26, 2015, after Kelley's house was searched, and when

6   Kelley was well aware that he was likely to be charged criminally in the near future,

7   Kelley withdrew the entirety of the  remaining balance from the money at Vanguard.

8   Specifically, he wrote a check in the amount of $908,397.51 that was deposited into the

9   trust account of the law firm of Davis Wright Tremaine LLP.  *Id.* ¶ 103.  And he wrote a

10  check for $447,421 to the United States Treasury in supposed payment of his taxes for

11  the years 2016-2020.  *Id.*

12         Based upon this conduct, the Superseding Indictment charges Kelley with a

13  number of crimes.  Among these, Count 1 charges Kelley with possession of stolen

14  property, based upon Kelley's possession between 2008 and 2012 of money taken by

15  fraud and theft from Fidelity National, Old Republic, and borrowers that Kelley

16  transferred to the Blackstone International account at Nevada State Bank, and then to the

17  Berkeley United account at Vanguard.  And Counts 6-10, each of which is based upon

18  one of Kelley's annual $245,000 drawdowns of the money remaining in the pot at

19  Vanguard, charge Kelley with money laundering designed to conceal and disguise the

20  nature, location, source, ownership and control of the proceeds of Kelley's original fraud.

21         The Superseding Indictment also contains two forfeiture allegations.  Specifically,

22  it alleges that, upon conviction of the offense of possession of stolen property, Kelley

23  shall forfeit all property that constitutes or is derived from proceeds traceable to that

24  offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), including a

25  money judgment of $1,463,171.  *Id.* ¶ 158.  And it alleges that, upon conviction of the

26  money laundering counts, Kelley shall forfeit all property involved in those offenses, and

27  all property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1), including the

28

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 5

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

$908,397.51 transferred to Davis Wright Tremaine's trust account and the $447,421 transferred to the United State Treasury.  *Id.* ¶ 159.

**B.     The Civil Seizure Warrant**

In addition to the criminal charges against Kelley, on September 2, 2015, the Government applied to, and obtained from, Magistrate Judge Brian A. Tsuchida a civil seizure warrant to seize the $908,397.51 contained in the Davis Wright Tremaine trust account.  *See In Re: The sum of $908,397.51.51 in United States Funds Contained in Bank of America Trust Account No. xxxxxxxx3414,* Docket No. 1 (Misc. Case No. 15-129 BAT W.D. Wa.) (a copy of which is attached as Exhibit A).

The affidavit in support of that warrant alleged many of same facts set forth in the Superseding Indictment returned by the grand jury.  Thus, the affidavit described the same scheme by Kelley to defraud and steal from escrow companies and borrowers contained in the Superseding Indictment.  *See* Exhibit A, Affidavit of Special Agent Michael Brown ¶¶ 21-63.  The affidavit explained how the FBI forensic accountant who performed the financial analysis in the case had determined that Kelley and PCD had failed to return $2,964,679 to escrow companies and/or borrowers, *see id.* ¶¶ 76-77, the same amount alleged in the Superseding Indictment.

The affidavit also alleged that, following the filing of civil class action lawsuits against escrow companies, Kelley had engaged in the same series of transfers of money (including proceeds of his fraud), from accounts in the State of Washington to the Blackstone International account at the Nevada State Bank, and from there to the Berkeley United account at Vanguard that were described in the Superseding Indictment.  I*d.* ¶¶ 65-71, 80-83.

Consistent with the Superseding Indictment, the affidavit alleged that the FBI forensic accountant's analysis showed that, of the $3,784,619 transferred by Kelley from Washington State to Blackstone International's account at Nevada State Bank in Nevada on June 18, 2008, at least $1,618,744 was money that Kelley had failed to refund.  *Id.*

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 6

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

¶¶ 78-79.  And, consistent with the Superseding Indictment, it alleged that, of the $3,634,673 that Kelley then transferred from there to Berkeley United's account at Vanguard in Pennsylvania on June 27, 2008, at least $1,463,171 was proceeds of Kelley's original fraud.  *Id.* ¶ 83.

Significantly, however, the affidavit relied on a theory of forfeiture not charged in the criminal case.  Namely, the affidavit alleged that, after Kelley transferred $1,618,744 of funds taken by fraud and stolen from Washington State to Blackstone's International account at Nevada State Bank, Kelley possessed stolen property in violation of 18 U.S.C. § 2315.  *Id.* ¶ 79.  And, it then alleged that Kelley's subsequent transfer of $3,634,673 to Berkeley United's account at Vanguard in Pennsylvania constituted a money laundering transaction that was designed to conceal the nature, location source, ownership, and control of the proceeds of specified unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(B)(i).  *Id.* ¶ 84.

As a consequence, the affidavit alleged, the entire contents of the Berkeley United account at Vanguard were subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in a money laundering transaction, as were any funds traceable to those funds.  *Id.*  The affidavit then set forth the evidence tracing the $908,397.51 paid into Davis Wright Tremaine's trust account from the Berkeley United account at Vanguard. *Id.* ¶¶ 93-100.

Based upon the application and affidavit, Magistrate Judge Tsuchida issued the civil seizure warrant for the $908,397.51.  The Government subsequently executed that warrant, and seized this money.  *See In Re: The sum of $908,397.51.51 in United States Funds Contained in Bank of America Trust Account No. xxxxxxxx3414,* Docket No. 3 (Misc. Case No. 15-129 BAT W.D. Wa.)  (A copy of which is attached as Exhibit B).

//

//

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 7

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

# III.   ARGUMENT

## A.   There is no Right to a Probable Cause Hearing in a Civil Forfeiture Action

### 1.   The Seizure is Governed by Civil Forfeiture Rules

Kelley is not entitled to the probable-cause hearing that he seeks, because the seizure that he is challenging was executed pursuant to a civil seizure warrant.  The Government will shortly file a civil forfeiture action against the seized funds.  The rules that govern such an action do not contemplate that a person claiming seized funds is entitled to a probable-cause hearing to challenge the seizure.

There is no dispute that the government seized the subject funds, $908,397.51.51, pursuant to a civil seizure warrant.  The seizure warrant was issued pursuant to 18 U.S.C. § 981(a)(1), and the application for the warrant, on its face, indicated it was supported by "the attached Affidavit of FBI Special Agent Michael Brown in Support of *Civil* Seizure Warrant."  *See* Exhibit A (emphasis added).

Where, as here, assets are seized and are not subject to administrative forfeiture (in this case, because their value exceeds $500,000), the Department of Justice's policy is that, when a claimant requests the release of property, "the U.S. Attorney should commence a judicial forfeiture action within 90 days of the receipt of a written request for the release of the property from a potential claimant."  Asset Forfeiture Policy Manual § 1.G.3.d (2013).  To ensure compliance with this policy, the Government intends to file its civil forfeiture complaint, not later than 90 days after the date of seizure, that is, on or before December 2, 2015.

Because the government has seized Kelley's funds from the Davis Wright Tremaine account pursuant to a civil seizure warrant, and because the Government is pursuing the forfeiture in a civil proceeding, as outlined above, civil forfeiture procedures govern considerations of whether or not Kelley is entitled to a hearing to challenge probable cause.  Neither the procedural statutes governing civil forfeiture, nor the

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 8

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  supplemental rules enacted pursuant to those statutes, provides for a post-seizure hearing

2  to challenge probable cause.

### 2. Civil Forfeiture Rules do not Authorize a Probable Cause Hearing

Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset

Forfeiture Actions was adopted in 2006 to bring together the procedures that govern civil

forfeiture actions. *United States v. Approximately $658,830.00 in U.S. Currency*, 2011

WL 5241311, at *2 (E.D. Cal. Oct. 31, 2011); *see also* 18 U.S.C. § 983(a)(3)(A) (civil

forfeiture actions must be filed "in the manner set forth in the Supplemental Rules…").

Rule G "governs a forfeiture action *in rem* arising from a federal statute." Supplemental

Rule G(1).  To the extent that Rule G does not address an issue, Supplemental Rules C

and E and the Federal Rules of Civil Procedure also apply.  *Id.*

Rule G(8), entitled "Motions," which expressly lists the motions available in

forfeiture actions, does not include any right to a post-seizure, pretrial hearing to contest

probable cause.  Rule G(8)(a) permits a motion to suppress.  Rule G(8)(b) provides for a

motion to dismiss.  Rule G(8)(c) provides for a motion to mitigate forfeiture based on the

Eighth Amendment.  Rule G(8)(d) provides for a petition for return of property under 18

U.S.C. 983(f) based on financial hardship.  Significantly, Kelley has not alleged hardship

or sought to take advantage of this rule.  Finally, Rule G(9), entitled "Trial," addresses

how a forfeiture action not resolved by the enumerated motions should be handled.

The remaining civil rules and Supplemental Rules C and E may apply where Rule

G "does not address an issue."  Since Rule G addresses the procedurally-available

remedies, other rules cannot justify the requested probable cause hearing.  Regardless,

however, Supplemental Rules C and E, and the Federal Rules of Civil Procedure, contain

no provision for a preliminary hearing to contest probable cause in a personal-property

forfeiture case brought by the Government.  In fact, Rule E, which provides for a prompt

hearing after the arrest of property *in rem*, expressly exempts the Government in a

forfeiture proceeding from any requirement that it must show probable cause at a post-

seizure hearing.  *See* Suppl. R. E(4)(f) ("This subdivision shall have no application … to

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 9

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

actions by the United States for forfeitures for violation of any statute of the United States.").  Therefore, Rule E actually precludes the availability of a post-seizure probable cause hearing in a civil forfeiture case.

Finally, although Congress did provide for a prompt post-seizure hearing with respect to the pretrial seizure of real property, in 18 U.S.C. § 985(d)(1) and (e), that remedy applies only to civil forfeitures of real property and interests in real property.  *See* 18 U.S.C. § 985(f)(1).  No such provision applies to civil forfeiture actions seeking forfeiture of other types of assets.   In sum, nothing in the civil forfeiture statutes, or the Supplemental Rules, authorizes the probable cause hearing that Kelley seeks.

### 3.        The Case Law Confirms that Kelley is not Entitled to a Hearing.

A number of recent cases in other districts have addressed claims by defendants that they were entitled to probable-cause hearings to challenge civil seizures of assets. Those cases consistently have rejected such claims.

In *United States v. Any and All Funds on Deposit in Account Number 0139874788, at Regions Bank, Held in the Name of Efans Trading Corp., et al.*, 2015 WL 247391 (S.D.N.Y. Jan. 20, 2015), the Government seized a number of bank accounts and automobiles, almost all based upon the issuance of seizure warrants.  The Government subsequently filed civil forfeiture actions against these assets.  The owner of the assets then filed a motion seeking a probable cause hearing and the release of the assets.

The court reviewed Supplemental Rules G, C, and E, and found that none of the rules authorized a probable cause hearing.  *Efans Trading Corp.*, 2015 WL 247391, at *13.  The court also noted the Supreme Court's recent decision in *Kaley v. United States,* ___ U.S. ___, 134 S. Ct. 1090 (2014).  In that case, the Supreme Court held that a grand jury's determination, reflected in an indictment, that defendants had committed crimes with which they were charged could not be challenged by defendants via a probable cause hearing to challenge forfeiture.

The *Efans Trading Corp.* court noted that determinations of probable cause by a magistrate judge in issuing the seizure warrants to seize the defendant assets were entitled

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 10

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    to great deference, and held the rule adopted in *Kaley* should also apply in this context.

2    *Id.* at 14.  As a result, the court held that claimants "ha[d] no right to relitigate the[e]

3    [probable cause] finding[s]" made by the magistrate judges who had issued the seizure

4    warrants in the case.  *Id.* at 14 (*quoting Kelley,* ___ U.S. at ___, 134 S. Ct. at 1094).  The

5    court therefore denied claimants' motion for a probable cause hearing to challenge the

6    seizure of the accounts and vehicles that had been seized pursuant to seizure warrants.

7    *Id.* at 14, 16.

8         Other courts similarly have concluded that claimants are not entitled to probable-

9    cause hearings to challenge the validity of a magistrate judge's finding of probable cause

10   to seize assets.  For example, in *In re The Premises Known and Described as 100*

11   *Sweeneydale Ave.,* 2015 WL 3607572 (E.D.N.Y. June 6, 2015), claimants whose assets

12   had been seized pursuant to the execution of a search warrant sought a probable-cause

13   hearing.  The court followed the court in *Efans Trading Corp.,* and denied claimants'

14   request for the hearing noting that the property had been seized "based on [] probable

15   cause determinations of two magistrate judges."  I*d.* at 10.  As a result, the court held that

16   "[b]ased on the reasoning of *Kaley* and *Efans Trading Corp.*, a probable cause hearing is

17   neither appropriate, nor constitutionally required."  *Id.*

18        Similarly, in *In Re the Seizure of Any and All Funds on Deposit in Wells Fargo*

19   *Bank, NA Account Number xxxxxxx, Held in the Name of Roger and Sons, Inc.,* 25 F.

20   Supp. 3d  270 (E.D.N.Y. 2014), a civil forfeiture proceeding, a claimant corporation

21   moved for release of funds seized from a bank account pursuant to a seizure warrant

22   issued by a magistrate judge.  The claimant argued, *inter alia,* that it was not afforded a

23   post-seizure hearing.  In denying the motion, the court found that probable cause had

24   already been resolved by the magistrate judge, who made a determination that the

25   affidavit submitted in support of seizure warrant application established probable cause to

26   believe the funds were subject to seizure.  *Id.* at 279.  The court also noted that the

27   claimant had a full and fair opportunity to be heard in the civil forfeiture action.  *Id.* at

28   280.

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 11

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### 4.   *Crozier* and *Roth* are Inapposite

The cases upon which Kelley relies, *United States v. Crozier*, 777 F.2d 1376 (9th Cir. 1985), and *United States v. Roth*, 912 F.2d 1131 (9th Cir. 1990), involved very different facts and, contrary to Kelley's claims, do not require this Court to provide him with the hearing that he seeks.  In *Crozier*, several defendants were charged with drug offenses, and the district court granted the government's *ex parte* motion to restrain defendants' real and personal property pursuant to 21 U.S.C. § 853(e).  *Crozier,* 777 F.2d at 1379.  According to the forfeiture provisions afforded by 21 U.S.C. § 853 *et seq.*, however, no one -- not even a third party with an interest in the restrained property -- could challenge the restraint until and unless the relevant defendant was convicted and the appeal process completed.  *Id*. at 1384.  As a result, the parties faced the possibility of a lengthy deprivation of property rights without any recourse.  *Id*.  Finding the absence in the § 853 forefeiture provisions of a mechanism to test the  validity of a restraining order within the course of a criminal case as violative of a party's Fifth Amendment due process rights, the Ninth Circuit held that a pre-trial hearing regarding the restraint was warranted.  *Id*.  The *Roth* court, again in the context of a criminal restraint of property pursuant to 21 U.S.C. § 853(e), simply re-affirmed the holding first set forth in *Crozier.*  *Roth,* 912 F.2d at 1133.

The current case presents a very different situation from that in *Crozier* and *Roth.*  The Ninth Circuit's due process concerns in *Crozier* and *Roth* were triggered by the fact that, in those criminal property-restraint cases, no one could test the government's restraint of property until <u>after</u> the completion and appeal of the criminal case, a process that could take years.  *See Crozier*, 777 F.2d at 1384 (noting that the underlying criminal case was filed more than five years earlier and that the defendant's trial and appeal could take several more years).  As the *Crozier* court emphasized, even if the defendants were acquitted, the parties would be left with no remedy for the lengthy and wrongful deprivation of their property.  777 F.2d at 1384.

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 12

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    Here, unlike *Crozier* and *Roth,* the money was seized not by means of what is

2 effectively a temporary restraining order, but by means of a seizure warrant duly

3 authorized by a United Magistrate Judge after a finding of probable cause that the assets

4 at issue are forfeitable.  Even more important, here, unlike in *Crozier* and *Roth*, the fate

5 of the seized property does not depend wholly, and need not wait, upon the final outcome

6 of Kelley's criminal case.  The United States has and will continue to pursue a civil

7 forfeiture proceeding, separate and apart from the current criminal case, that (assuming

8 the civil action is not stayed, a question for the presiding court to decide at a later date

9 and under the applicable legal standards) will provide Kelley with the opportunity to

10 address the validity of the government's seizure directly.[1]

11    Significantly, the defendants in an Idaho criminal fraud case, *United States v.*

12 *Swenson*, 2013 WL 3323632 (D. Idaho July 1, 2013), one of whom was represented by

13 Kelley's current defense counsel, made virtually the same arguments in that case that

14 Kelley advances here.  In *Swenson*, however, as here, the assets in question had been

15 seized pursuant to seizure warrants.  As a result, the *Swenson* court found that *Crozier*

16 and *Roth* had "limited application" to the case, *id.* at *6, and, ultimately, denied the

17 defendants' request for a probable-cause hearing.  This Court should do the same.

18    In short, Kelley does not provide any authority that indicates that the rule of

19 *Crozier* and *Roth* extends to the present situation.  And it should not.  Rather, the Court

20

21 _____

22 [1] While the $908, 397 has also been included for forfeiture in the Superseding Indictment, it is
being held pursuant to a civil seizure warrant, and will be maintained by the Government as part

23 of an anticipated civil complaint that the Government intends to file within 90 days, in full
compliance with the time limits for civil forfeiture proceedings.  The use of parallel, but separate,

24 criminal and civil proceedings is entirely appropriate.  *See, e.g., United States v. Ursery*, 518
U.S. 267, 274 (1996) ("Since the earliest years of this Nation, Congress has authorized the

25 Government to seek parallel *in rem* civil forfeiture actions and criminal prosecutions based upon

26 the same underlying events."); *United States v. Nava*, 404 F.3d 1119, 1123 (9th Cir. 2005)
(holding that the government may seek the forfeiture of property in either a civil or a criminal

27 proceeding.); *United States v. Leyland*, 277 F.2d 628, 633 (2nd Cir. 2002) (holding that there is
nothing improper about beginning a forfeiture as an allegation in a criminal indictment, and then

28 switching to civil forfeiture.)

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 13

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   should find that neither the civil forfeiture rules, nor any other authority, either authorizes

2   or requires that the Court conduct a probable-cause hearing.  Kelley is not entitled to

3   relitigate the magistrate judge's determination of probable cause.  Kelley may only

4   contest the seizure of his assets through the means provided by the civil forfeiture rules.

5   As *Efans Trading Corp.* noted, "Supplemental Rule G provides [] an adequate procedure

6   to contest the seizure of [] property, namely trial."  *Efans Trading Corp.* at 15.

7   **B.    Kelley Cannot Show that He is Entitled to a Probable-Cause Hearing Based**

8   **      upon his Right to Counsel.**

9          Although a defendant is not normally entitled to a probable-cause hearing to

10  challenge the seizure of assets, the defendant may be entitled to such a hearing if his

11  Sixth Amendment right to counsel in a criminal case is implicated because the defendant

12  has no other funds available to pay an attorney in the criminal case.  A line of cases has

13  developed at the circuit court level acknowledging a right to such a hearing, but only if

14  the defendant can make a required threshold showing.

15         A majority of the courts have adopted the two-part test set forth by the Tenth and

16  Fourth Circuits in *United States v. Jones,* 160 F.3d 641, 647-48 (10th Cir. 1998), and

17  *United States v. Farmer,* 274 F.3d 800, 804-05 (4th Cir. 2001).  Under *Jones* and *Farmer,*

18  a defendant has a right to a post-restraint, pretrial hearing if he makes two threshold

19  showings:  first, that he has no assets other than those subject to a restraining order or

20  seizure with which to exercise his Sixth Amendment right to counsel; and, second, that

21  there is a *bona fide* reason to believe that the court (or grand jury) erred in finding

22  probable cause to believe the seized or restrained property would be subject to forfeiture.

23         The leading case in the Ninth Circuit is *United States v. Unimex Inc.,* 991 F.2d 546

24  (9th Cir. 1993).  In that case the Ninth Circuit held that a corporation's right to counsel

25  under the Sixth Amendment and to due process under the Fifth Amendment were

26  violated when the government seized all of its assets, thereby denying it the opportunity

27  to show the funds it could have used for attorneys were nonforfeitable.  The Ninth Circuit

28  further held that

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 14

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

> To determine whether a hearing is required, the court must decide whether the moving papers filed, including affidavits, are sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented.  If the allegations are sufficient, and factual issues are raised, a hearing is required.

*Id.* at 551.

Thus, under *Unimex, Inc.*, to obtain a hearing, a defendant must demonstrate that he "do[es] not have sufficient alternative, unrestrained assets to fund counsel of [his] choice," and that "there is a substantial basis to question [the issuing judge's] probable cause finding that the assets may be subject to forfeiture."  *Swenson*, 2013 WL 3323632 at *7. Kelley cannot make either showing.

### 1.        Kelley Cannot Show that he Lacks Other Assets.

Although Kelley's brief rails against the "tactical advantage" that prosecutors supposedly gain by depleting defendants' resources, *see, e.g.,* Defendant's Mot. at 1, it is notable that Kelley never even claims that he needs the money seized from the Davis Wright Tremaine account in order to retain counsel.

Indeed, Kelley could not credibly make such a claim.  The government's investigation has demonstrated that Kelley has substantial additional assets that are available to retain counsel.  (In the event that Kelley does claim in a reply brief that he needs the seized funds to retain counsel, the Government will provide a schedule of those assets to the Court.)

Because Kelley has neither alleged, nor made a showing, that his Sixth Amendment right to counsel of his choice has been implicated by the seizure of funds, Kelley does not qualify for a probable-cause hearing under *Jones, Farmer* and *Unimex, Inc.*.

//

//

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 15

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**2.      Kelley Also Cannot Show a Substantial Basis to Question Judge Tuschida's Probable-Cause Finding.**

In addition to the fact that Kelley cannot show that he lacks other assets, Kelley also has failed to establish a substantial basis to question Magistrate Judge Tsuchida's finding of probable cause to issue the seizure warrant.

The only thing Kelley has filed in support of his contention that he is entitled to a probable-cause hearing are the exhibits to defense counsel's affidavit, namely, the application and FBI Special Agent Brown's affidavit in support of issuing the civil seizure warrant, and a portion of a grand jury exhibit setting forth a chronology of financial transactions.  Kelley fails to offer any actual evidence rebutting the basis for the seizure warrant.

      *a.      Kelley Incorrectly Claims that the Seized Funds are not Traceable to Specified Unlawful Activity.*

Kelley argues that, because he paid $1,050,000 out of the Berkeley United account at Vanguard to Old Republic in 2011, and then withdrew $245,000 in each of 2011 and 2012, that the $1,463,171 of tainted proceeds transferred into in the account were dissipated from the account by 2012, and that remaining money in the account and the $908,397.51 subsequently transferred to Davis Wright Tremaine therefore is not subject to forfeiture.  *See* Defendant's Mot. at 9-10.  Kelley is incorrect.

The affidavit in support of the civil forfeiture warrant alleged a different theory of forfeiture than the forfeiture theories in the Superseding Indictment.[2]  According to the theory set forth in the affidavit in support of the civil seizure warrant, after Kelley transferred $3,784,619, which contained at least $1,618,744 of funds taken by fraud and stolen, from Washington State to Blackstone's International account at Nevada State Bank, Kelley possessed stolen property in the Blackstone International account in violation of 18 U.S.C. § 2315.

---

[2] Although this brief discusses only the theory contained in the affidavit in support of the civil forfeiture warrant, the Government may also include additional theories in its upcoming civil forfeiture complaint.

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 16

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

The subsequent June 27, 2008, transfer of $3,634,673.00 from Blackstone International's account into the Berkeley United account at Vanguard, is the key money laundering transaction that forms the basis for the civil seizure.  That transfer, into an account of a company with a different name and that was largely owned by a Belizean trust, was designed to conceal the origin, source, location and control of proceeds of specified unlawful activity, namely, the violation of 18 U.S.C. § 2315 and of underlying wire fraud in violation of 18 U.S.C. § 1341, and constituted a money laundering transaction in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

As long as a portion of the comingled funds were criminal proceeds, all of the transferred funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in money laundering.  *See United States v. Huber,* 404 F.3d 1047, 1058 (8th Cir.2005); *U.S. v. Ward,* 197 F.3d 1076, 1083 (11th Cir. 1999); *U.S. v. Garcia,* 37 F.3d 1359, 1365 (9th Cir. 1994) ("it is sufficient to prove that the funds in question came from an account in which tainted proceeds were comingled with other funds").

Thus, all of the funds that Kelley transferred to the Berkeley United account at Vanguard constitute laundered funds, and all are civilly forfeitable as property involved in money laundering, as are all funds traceable to that property involved in money laundering.  Because the seized $908,397.51.51 is directly traceable to that transaction, it is forfeitable to the United States, despite the fact that Kelley previously transferred other money out of the corpus.

> b.   *Kelley's Challenges to the Government's Civil Forfeiture Theory are Without Merit.*

Kelley next claims that the Government's civil forfeiture theory improperly relies on a "commingling" theory, and one that is barred by the statute of limitations.  *See* Defendant's Mot. at 10-12.  Kelley is incorrect on both accounts.

First, as noted above, the affidavit in support of the civil seizure warrant established that the $3,784,619 transferred by Kelley to Blackstone International's account at Nevada State Bank contained at least $1,618,744 of stolen money.  The

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 17

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  subsequent transfer of essentially the entire corpus to the Berkeley United account at

2  Vanguard in a transaction designed to conceal or disguise the location of the money

3  constituted money laundering of the entire corpus.  And, as a result, the entire corpus of

4  the money, and all money traceable to it, is forfeitable.  S*ee Huber,* 404 F.3d at 1058;

5  *Ward,* 197 F.3d at 1083; *Garcia,* 37 F.3d at 1365.

6          Second, although the five-year statute of limitations for criminal cases bars

7  criminal prosecution of the June 27, 2008, transfer of money to the Berkeley United

8  account at Vanguard, the civil forfeiture action is governed by a different statute of

9  limitations triggered by the discovery of the crime, rather than the date of its occurrence.

10  *See* 19 U.S.C. § 1621; 18 U.S.C. § 981(d).   As a result, the civil forfeiture action is not

11  time-barred.  Moreover, the statute of limitations is an affirmative defense.  *United States*

12  *v. 6 Fox Street*, 480 F.3d 38 (1st Cir. 2007).  As a result, it is not part of the Government's

13  case, and could never be a basis for a probable-cause hearing.

14                 c.      *Kelley incorrectly claims that the affidavit is suspect and conclusory*

15          Third, Kelley challenges the conclusions of the FBI forensic accountant who

16  performed analysis on which the affidavit was based, based on collateral issues about that

17  accountant that were disclosed in the affidavit.  *See* Defendant's Mot. at 12-13.  The key

18  point, however, is that these issues were disclosed to the magistrate judge, who

19  nevertheless (and correctly) found the affidavit established probable cause.

20          Kelley also claims that the affidavit is "conclusory" in describing the accountant's

21  work.  *See* Defendant's Mot. at 12-13.  In fact, as set forth in Part II.B., the 25-page

22  affidavit contains a detailed description of the financial analysis in the case, including,

23  among other things, the number of transactions that Kelley and PCD handled, the amount

24  of money that Kelley and PCD earned per transaction, the limited amount of money that

25  Kelley and PCD paid to trustees and county recording offices, the amount of money that

26  Kelley therefore failed to refund, and the myriad subsequent transactions through which

27  Kelley laundered the stolen money.  As a result, the affidavit is anything but conclusory,

28  and Kelley has once again failed to establish a substantial basis to challenge forfeitability.

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 18

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  In sum, Kelley has failed to make the showing required under either prong of

2  *Unimex, Inc.* Therefore, Kelley is not entitled to a hearing based upon any infringement

3  on his right to counsel.

4  **C.    Defendant's Motion to Consolidate Proceedings Should Be Denied.**

5  Finally, Kelley has asked the Court to "consolidate" the proceedings in this case.

6  At this stage, there is no other currently-pending proceeding to consolidate with this

7  criminal case.  The Government obtained a civil seizure warrant for the $908,397.51

8  located in Davis Wright Tremaine's trust account from a Magistrate Judge in Seattle,

9  because the money to be seized was located in Seattle, rather than in Tacoma (rather than

10  for any "strategic" reason, as Kelley suggests, *see Defendant's Mot.* at 6 n.2).  The

11  Government subsequently executed that warrant.

12  When the Government files its civil forfeiture action against the money, which it

13  will do on or before December 2, 2015, there will be a civil forfeiture proceeding

14  pending.  The Government will then file a notice of related case, and believes that

15  considerations of judicial efficiency would support the transfer of that case to this Court.

16  The Government would welcome such a transfer

17  Significantly, however, even if both actions are before this Court, the criminal and

18  civil cases should proceed on separate and independent tracks.  Although based upon the

19  same facts, the two are based upon separate legal theories of forfeiture and focus on

20  different money-laundering transactions.  In addition, the actions should proceed

21  separately, pursuant to the relevant rules governing each type of proceeding.  For these

22  reasons, Kelley's motion to "consolidate" proceedings should be denied.

23  **IV.    CONCLUSION**

24  In sum, Kelley has not shown that he is entitled to a probable cause hearing.  The

25  Supreme Court has well recognized the costs of such hearings, which can be tantamount

26  to mini-trials.  *See Kaley*, 134 S. Ct. at 1101, 1104 (noting that granting a hearing could

27  require would "consume significant prosecutorial resources," would "rehearse the case's

28

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 19

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  merits, including the Government's theory and supporting evidence," and could

2  "undermine the Government's ability either to obtain a conviction or to preserve

3  forfeitable property," and that "prosecutor[s] would be likely to relinquish a freeze just to

4  avoid premature discovery").

5    For this reason, and the other reasons set forth above, Defendant's motion for a

6  post-seizure evidentiary hearing, and to consolidate the forfeiture of the $908,397.51

7  seized from the trust account of Davis Wright Tremaine with this criminal case, should

8  be denied.

9    DATED:  this 13th day of October, 2015

10            Respectfully submitted,

11            ANNETTE L. HAYES

12            United States Attorney

13

14            *s/ Richard E. Cohen*

15            RICHARD E. COHEN

16            Assistant United States Attorney

17            700 Stewart Street, Suite 5220

          Seattle, Washington 98101

18            Telephone: 206-553-2242

          Facsimile: 206-553-6934

19            E-mail:  Richard.E.Cohen@usdoj.gov

20

21

22

23

24

25

26

27

28

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 20

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

2

**CERTIFICATE OF SERVICE**

3      I hereby certify that on October 13, 2015, I electronically filed the foregoing with the

4 Clerk of the Court using CM/ECF system which will send notification of such filing to the

5 attorney(s) of record for the defendant(s).

6

7                                              *s/ Michael McLaren*

8                                              MICHAEL MCLAREN
                                               FSA Paralegal IV
9                                              United States Attorney's Office
                                               700 Stewart Street, Suite 5220
10                                             Seattle, Washington 98101-1271
                                               Telephone:     (206) 553-4381
11                                             Facsimile:     (206) 553-6934
12                                             Email:         Michael.McLaren@usdoj.gov

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOVERNMENT'S OPPOSITION TO MOTION TO CONSOLIDATE
PROCEEDINGS AND FOR EVIDENTIARY HEARING REGARDING
PRETRIAL SEIZURE OF ASSETS/KELLEY (CR15-5198 RBL) - 21

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800