The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

TROY X. KELLEY,

Defendant.

NO. CR15-5198 RBL

**GOVERNMENT'S OPPOSITION TO**
***EX PARTE* MOTION FOR RELEASE
OF FUNDS**

Defendant, Troy Kelley, has filed a motion seeking the release of $200,000, to be used for payment of experts, from the $908,397.51 that the Court recently ordered returned to Calfo Harrigan Leyh & Eakes LLP's trust account. That $908,397.51 originally was seized from the trust account of Davis Wright Tremaine LLP, pursuant to a seizure warrant based upon a probable-cause finding by United States Magistrate Judge Brian Tsuchida that the money was subject to forfeiture as property involved in a money laundering transaction, or property traceable to such property.

Kelley sought, and received, a due process hearing from this Court concerning the seizure. At that hearing, which took place on December 1-3, 2015, the Government presented testimony and exhibits to support Magistrate Judge Tsuchida's probable-cause determination. At the conclusion of the hearing, the Court indicated that it did not wish

GOVERNMENT'S OPPOSITION TO *EX PARTE* MOTION FOR RELEASE
OF FUNDS/U.S. V. KELLEY (CR15-5198 RBL) - 1

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   "possibly, to taint the jury to taint the jury panel with [its] observation of guilt or

2   innocence on anything," and that it wished to "go back to the *status quo ante*."

3   Transcript of Hearing at 48, 51 (Dec. 3). As a result, the Court ordered the money

4   "transferred to Mr. Calfo's trust account, to be held in a blocked account unless and until

5   further proceedings occur[]." *Id.* at 58.

6        Kelley has now filed a motion seeking the release of $200,000 of the frozen

7   money to pay experts. The Court should deny this motion for several reasons. First, it

8   appears highly likely that Kelley has sufficient alternative assets available fully to fund

9   his defense, including paying experts, without disturbing the *status quo* and depleting the

10  frozen funds. Kelley should be required to exhaust those other available resources, which

11  the Government has neither sought to restrain nor to forfeit, before asking the Court to

12  allow him to spend funds that are subject to forfeiture. Second, the restrained funds are

13  the likeliest source of restitution for Kelley's victims. If Kelley is permitted to spend

14  these funds, victims will go uncompensated for their losses. And, third, it is well

15  established that defendants may not use forfeitable money to fund their criminal defense.

16  **1. It Appears Kelley has Sufficient Alternative Assets to Fund his Defense.**

17       Although the Government is at somewhat of a disadvantage, since it has not had

18  the benefit of seeing any portion of Kelley's submission to the Court, the Government

19  believes that Kelley cannot establish that he lacks sufficient alternative assets to fund his

20  defense.

21       As an initial matter, Kelley clearly had sufficient resources to enable him to retain

22  his attorney of choice. Kelley initially was represented by Mark Bartlett of Davis Wright

23  Tremaine LLP and Robert McCallum of LeSourd & Patten, P.S. Kelley subsequently

24  elected to retain Angelo Calfo to replace prior counsel, in approximately August 2015.

25  Mr. Calfo agreed to represent Kelley at a time when the subject $908,397.51 was being

26  retained in the Davis Wright account by agreement of the parties. Mr. Calfo took on the

27  representation knowing that the Government intended to seek forfeiture of those funds,

28

GOVERNMENT'S OPPOSITION TO *EX PARTE* MOTION FOR RELEASE
OF FUNDS/U.S. V. KELLEY (CR15-5198 RBL) - 2

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  and that there was a strong probability that they would be seized and unavailable to apply
2  towards Kelley's defense.

3        In addition,  FBI Forensic Accountant Gary Beisheim has analyzed Kelley's
4  available resources as of April 30, 2015, a date shortly after Kelley's April 15, 2015,
5  indictment.  Mr. Beisheim's analysis is summarized in a declaration, with attached
6  spreadsheets, that the Government is filing under seal on this same date.  The analysis
7  shows that (separate and apart from the $908,397.51, that Kelley transferred to the trust
8  account of Davis Wright, and that the Government subsequently seized), Kelley had paid
9  an additional significant sum to Davis Wright just prior to April 30, 2015, presumably for
10 legal representation.  It is likely that some of this money was unspent and still available
11 in August, 2015, and subsequently was transferred to Calfo Harrigan.

12       In addition, Mr. Beisheim's analysis shows that Kelley had a large amount of
13 additional investment assets as of April 30, 2015.  Kelley and his wife also had
14 substantial equity in their residence.  And, finally, since returning to work as State
15 Auditor, Kelley has been drawing a significant salary for that position.  While the
16 Government cannot know what figures Kelley may have presented to the Court to
17 support his request to use a portion of the restrained funds to pay experts, the
18 Government believes that, when the Court takes into account the significant assets sent to
19 defense counsel before April 30, 2015, and the even larger pool of assets and income still
20 available to Kelley, the Court should find that Kelley has sufficient assets to pay both
21 counsel and experts without tapping into any of the restrained funds at the present time, if
22 not throughout the case.

23       At a minimum, the Court should find that, even if Kelley is likely to expend all of
24 his alternative assets at some future point -- as might be inferred from Mr. Calfo's
25 representation in e-mail correspondence that "the funds [Kelley] currently has available
26 will be necessary to pay trial counsel through the trial and in connection with any post-
27 trial motions or proceedings" -- Kelley should in fact be required to do so before being
28 permitted to draw against funds that are subject to forfeiture.  If Kelley indeed exhausts

GOVERNMENT'S OPPOSITION TO *EX PARTE* MOTION FOR RELEASE
OF FUNDS/U.S. V. KELLEY (CR15-5198 RBL) - 3

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

available alternative assets, the Court can consider at that time whether Kelley should be entitled to use restrained funds for his defense, or should instead be required to seek other sources of funds (such as CJA funds) for his defense.

**2. The Restrained Funds Will be Needed for Restitution.**

To be balanced against Kelley's application for $200,000 for expert fees is the competing need for those funds for restitution to the victims of Kelley's crimes. Assuming that Kelley is arguing, and is correct, that his alternative funds will be consumed by legal fees, the only funds available to pay Kelley's restitution obligations post-trial if he is convicted are the funds that currently are restrained by the Court's order. Assuming also that Kelley is convicted, a restitution order is entered, and the $908,397.51 is forfeited, the Government will apply to the Asset Forfeiture and Money Laundering Section of the Criminal Division of the Department of Justice to return these funds to the victims of Kelley's crimes in partial satisfaction of Kelley's outstanding restitution obligation, pursuant to the Department's Restoration Policy. *See Asset Forfeiture Policy Manual,* Ch. 12, Section I.B. (2013).

Even the full $908,397.51 is likely to be insufficient to pay the full amount of restitution in this case. FBI Forensic Accountant Beisheim testified at the Due Process hearing that Kelley's business, Post Closing Department, received a total of $3,766,282.07 from Fidelity National Title and Old Republic Title. *See* Government's Exhibit 40. Forensic Accountant Beisheim further testified that Kelley unlawfully retained at least $2,964,679.52 of this amount that should have been refunded to borrowers. *See id.*

Although, Kelley subsequently settled a lawsuit brought by Old Republic on behalf of its borrowers, none of the Fidelity victims has received any restitution. Of the $3,766,282.07 that Post Closing Department took in, $1,268,962.38 came from Old Republic. *See* Government's Exhibit 38. The remaining $2,497,319.69 came from Fidelity. As a result, after subtracting fees earned on this amount (namely, $317,370, *see* Government's Exhibit 40), and all of the trustee and recording fees and refunds paid by

Post Closing Department (namely, $248,772.55, *see id.*), Kelley unlawfully retained at least $1,931,177.14 that should have been refunded to Fidelity borrowers.

The $908,397.51 that currently is restrained by the Court will pay less than half of this amount of restitution. If the Court were to permit Kelley to spend $200,000 of the restrained money for experts, the shortfall would be even greater. The Court should not permit Kelley to use forfeitable funds that could be used to make his victims whole, in order to pay instead for his own criminal defense. As the Supreme Court stated in *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 629-30 (1989),

> The Government's interest in winning undiminished forfeiture thus includes the objective of returning property, in full, to those wrongfully deprived or defrauded of it. Where the Government pursues this restitutionary end, the Government's interest in forfeiture is virtually indistinguishable from its interest in returning to a bank the proceeds of a bank robbery; and a forfeiture-defendant's claim of right to use such assets to hire an attorney, instead of having them returned to their rightful owners, is no more persuasive than a bank robber's similar claim.

## 3. Kelley Has no Constitutional Right to Use Forfeitable Funds to Pay for his Legal Defense

Finally, case law that has been consistently followed for over twenty-five years, bars the use of forfeitable funds to fund a defendant's criminal defense, even if a defendant has no other assets to pay attorneys' fees or other defense costs. This issue was considered by the Supreme Court in 1989 in two cases, *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617 (1989), and *United States v. Monsanto,* 491 U.S. 600 (1989).[1] In *Caplin & Drysdale,* the Court held that neither the Fifth Amendment nor the Sixth Amendment exempted from forfeiture money that a convicted

---

[1] Although the Government has not summarized the evidence introduced at the December 1-3 evidentiary hearing that establishes that the $908,397.51 is in fact forfeitable, because the Court does not need to reach this issue to deny Kelley's request, and based upon the Court's indication at the conclusion of the hearing that it did not wish to make a finding as to probable cause, the Government will be prepared to address the issue at the status conference scheduled for January 6, 2016, or to file an additional brief doing so, if the Court wishes.

1  defendant had agreed to pay to his attorney. *Caplin & Drysdale,* 491 U.S. at 623-35.

2  The Court stated "it is our view that there is a strong governmental interest in obtaining

3  full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment

4  interest in permitting criminals to use assets adjudged forfeitable to pay for their

5  defense." *Caplin & Drysdale,* 491 U.S. at 631.

6        In the companion *Monsanto* case, the Court considered the related question of

7  whether the Government's freezing assets, subject to forfeiture, of an indicted defendant,

8  which the defendant wished to use to pay his lawyer to defend him in the criminal case,

9  violated the defendant's Sixth Amendment right to counsel of choice or the Due Process

10  Clause of the Fifth Amendment. *Monsanto,* 600 U.S. at 614-16. Following the same

11  rationale it had applied in *Caplin & Drysdale,* the Court held that there was no Fifth

12  Amendment or Sixth Amendment violation, and that even those assets needed to pay an

13  attorney were subject to restraint, if probable cause had been established that the assets

14  were subject to forfeiture, to preclude the defendant from dissipating his assets prior to

15  trial. *Id.*  As recently as 2014, the Supreme Court has reiterated that *Monsanto* is still the

16  applicable law. *Kaley v. United States*, 134 S. Ct. 1090 at 1097 (2014) ) ("With probable

17  cause, a freeze [of forfeitable assets] is valid.").

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

GOVERNMENT'S OPPOSITION TO *EX PARTE* MOTION FOR RELEASE
OF FUNDS/U.S. V. KELLEY (CR15-5198 RBL) - 6

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**4. Conclusion**

For the foregoing reasons -- particularly, because it appears Kelley has other assets available that could be used to pay for experts, and because permitting Kelley to use the restrained funds to pay experts will dissipate funds that are likely to be necessary to pay restitution to Kelley's victims -- the Court should deny Kelley's request to use $200,000 of the restrained funds to pay for experts.

DATED this 5th day of January, 2016.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney


RICHARD E. COHEN
ANDREW FRIEDMAN
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Telephone:   206-553-7970
Facsimile:   206-553-0882
E-mail:      Andrew.Friedman@usdoj.gov
             Richard.E.Cohen@usdoj.gov

GOVERNMENT'S OPPOSITION TO *EX PARTE* MOTION FOR RELEASE
OF FUNDS/U.S. V. KELLEY (CR15-5198 RBL) - 7

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2016, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the attorney(s) of record for the defendant(s).

*s/Jennifer Biretz*
JENNIFER BIRETZ
FSA Supervisory Paralegal
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone:    (206) 553-1520
Facsimile:    (206) 553-6934
Email:        Jennifer.Biretz@usdoj.gov

GOVERNMENT'S OPPOSITION TO *EX PARTE* MOTION FOR RELEASE
OF FUNDS/U.S. V. KELLEY (CR15-5198 RBL) - 8

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800