THE HONORABLE RONALD B. LEIGHTON

1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>   vs.<br><br>TROY X. KELLEY,<br><br>                       Defendant. | Case No.  3:15-cr-05198-RBL<br><br>DECLARATION OF ANGELO J. CALFO IN SUPPORT OF DEFENDANT'S RULE 29 MOTION FOR ACQUITTAL FOLLOWING DISCHARGE OF JURY<br><br>**NOTED FOR:**<br>**MONDAY, JUNE 20, 2016**<br>**(ORAL ARGUMENT REQUESTED)** |
|---|---|

16
      I, Angelo J. Calfo, declare as follows:

17
      1.     I am a partner with Calfo Harrigan Leyh & Eakes LLP ("CHLE"), the law firm

18
representing Mr. Kelley in this prosecution.

19
      2.     Attached as Exhibit A is a true and correct copy of excerpts of the rough

20
transcript of Mark Schedler's testimony, dated April 13, 2016.

21
      3.     Attached as Exhibit B is a true and correct copy of excerpts of the rough

22
transcript of Julie Yates's testimony, dated March 16, 2016.

23
      4.     Attached as Exhibit C is a true and correct copy of excerpts of the rough

24
transcript of Patricia LeVeck's testimony, dated March 23, 2016.

25

DECLARATION OF ANGELO J. CALFO IN
SUPPORT OF DEFENDANT'S RULE 29
MOTION FOR ACQUITTAL - 1

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

1        5.      Attached as Exhibit D is a true and correct copy of excerpts of the rough

2   transcript of Scott Smith's testimony, dated March 29, 2016.

3        6.      Attached as Exhibit E is a true and correct copy of excerpts of the rough

4   transcript of Erica Calderas's testimony, dated March 24, 2016.

5        7.      Attached as Exhibit F is a true and correct copy of excerpts of the rough

6   transcript of Julie Yates's testimony, dated March 17, 2016.

7        8.      Attached as Exhibit G is a true and correct copy of excerpts of the rough

8   transcript of Carl Lago's testimony, dated March 17, 2016.

9        9.      Attached as Exhibit H is a true and correct copy of excerpts of the rough

10  transcript of the government's rebuttal argument, dated April 20, 2016.

11       10.     Attached as Exhibit I is a true and correct copy of excerpts of the rough

12  transcript of the government's closing argument, dated April 20, 2016.

13       11.     Attached as Exhibit J is a true and correct copy of excerpts of the rough

14  transcript of Paul Shipley's testimony, dated April 12, 2016.

15      I declare under penalty of perjury that the foregoing is true and correct to the best of my

16  knowledge and belief.

17      DATED this 24th day of May, 2016 at Seattle, Washington.

18

19                        _____*s/Angelo J. Calfo*_____

20

21

22

23

24

25

1

## **CERTIFICATE OF SERVICE**

2

3        I hereby certify that on May 24, 2016, I electronically filed the foregoing with the Clerk

4   of the Court using the CM/ECF system which will send notification of such filing to the

5   following:

6        Andrew C. Friedman                andrew.friedman@usdoj.gov

7        Arlen R. Storm                    arlen.storm@usdoj.gov

8        Katheryn Kim Frierson             katheryn.k.frierson@usdoj.gov

9        Richard E. Cohen                  richard.e.cohen@usdoj.gov

10

11                                          *s/Susie Clifford*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DECLARATION OF ANGELO J. CALFO IN
SUPPORT OF DEFENDANT'S RULE 29
MOTION FOR ACQUITTAL - 3

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**IN TACOMA**

UNITED STATES OF AMERICA,    )
                              )
              Plaintiff,    )   No. CR15-5198RBL
                              )
        vs.           )      ROUGH DRAFT
                              )
TROY KELLEY,          )
                              )
             Defendant.    )

**TESTIMONY OF MARK SCHEDLER**

**BEFORE THE HONORABLE RONALD B. LEIGHTON**
**UNITED STATES DISTRICT COURT JUDGE**

**April 13, 2016**

APPEARANCES:

Andrew Friedman
Richard Cohen
Katheryn Frierson
Arlen Storm
Assistant United States Attorneys
Representing the Plaintiff


Angelo Calfo
Patricia Eakes
CALFO HARRIGAN LEYH & EAKES
Representing the Defendant

11:41:35AM 1    just explain to the jury what this settlement statement

11:41:39AM 2    section means on the closing agreement and the escrow

11:41:43AM 3    instructions?

11:41:43AM 4    A.   Well, it is telling us that the escrow agent,

11:41:46AM 5    Fidelity, is going to prepare a settlement statement, and

11:41:50AM 6    what the borrower should know about some of the items that

11:41:53AM 7    are shown there.  If I may, I would like to look at each

11:41:58AM 8    sentence.

11:41:59AM 9    Q.   Yes.

11:42:00AM 10   A.   Here we see the authority and the instructions to

11:42:02AM 11   prepare a settlement statement showing the funds that are

11:42:05AM 12   deposited and how the disbursement of those funds are

11:42:09AM 13   going to take place, and no disbursement will be done that

11:42:14AM 14   isn't approved in advance by the signing of the settlement

11:42:17AM 15   statement, by the borrower in this case.  And it tells the

11:42:23AM 16   borrower some items may be estimated, and the final amount

11:42:26AM 17   of each estimated item will be adjusted to the exact

11:42:29AM 18   amount required to be paid at the time of disbursement.

11:42:32AM 19       It shows again why there is a final settlement

11:42:36AM 20   statement later on.  And it is referring to items on the

11:42:40AM 21   settlement statement that are not fees but are estimated

11:42:44AM 22   amounts.  They would be noted typically as estimated.

11:42:48AM 23   Q.   And we are going to look at another settlement

11:42:51AM 24   statement in just a second.  But can you just explain to

11:42:54AM 25   the jury, is it significant from your perspective,

11:42:56AM 1  practicing in the real estate area, whether something is

11:42:59AM 2  listed as a fee or whether something is listed as a

11:43:02AM 3  deposit?

11:43:02AM 4  A.   Yes.

11:43:02AM 5  Q.   And why?

11:43:03AM 6  A.   Well, one big reason is it tells you who owns that

11:43:11AM 7  money after closing.  A fee is owned by the recipient of

11:43:18AM 8  the fee when it is paid.  Now, there may be services owed,

11:43:23AM 9  but it is not the borrower's money anymore.

11:43:28AM 10     A deposit is a borrower's money until it begins to get

11:43:36AM 11  earned.  And as it is earned it changes -- that part that

11:43:42AM 12  is earned changes ownership to the service provider, or

11:43:45AM 13  the cost that was paid, or whatever it is.  So the

11:43:47AM 14  critical difference, to me, between a fee and a deposit is

11:43:51AM 15  who owns the money.

11:43:52AM 16  Q.   And does that change things for the escrow company,

11:43:58AM 17  whether something is a fee or a deposit, in terms of what

11:44:01AM 18  their duties and responsibilities are?

11:44:03AM 19  A.   Absolutely.  Because if the escrow company or the

11:44:06AM 20  escrow agent is indicating that they are taking at the

11:44:10AM 21  time of closing a deposit that they are going to continue

11:44:13AM 22  to hold for some service, it means the relationship

11:44:18AM 23  between escrow and the borrower is going to continue after

11:44:22AM 24  the closing.  Those fiduciary duties related to that

11:44:25AM 25  deposit are going to continue after closing, and that

11:44:29AM 1   escrow agent is going to provide an accounting, and have

11:44:33AM 2   those duties.

11:44:34AM 3   Q.   So from an escrow perspective, if something that is

11:44:37AM 4   listed on the settlement statement is in fact a deposit,

11:44:42AM 5   is it important or would you expect it to be designated in

11:44:44AM 6   some way as being either estimated or as a deposit as

11:44:48AM 7   opposed to it being a fee?

11:44:50AM 8   A.   I would definitely expect it to be noted to -- as

11:44:54AM 9   part of that due that fiduciary duty to the borrower that

11:44:57AM 10  says this is your money, I am going to be holding your

11:44:59AM 11  money.

11:44:59AM 12  Q.   So is it fair to say that you don't see things listed

11:45:04AM 13  on a HUD-1 statement that are listed as a fee or a cost

11:45:08AM 14  that is being disbursed, and yet somehow it really remains

11:45:12AM 15  the borrower's money?

11:45:13AM 16  A.   No.

11:45:13AM 17  Q.   Let's go to --

11:45:16AM 18  A.   That wouldn't the standard of care.

11:45:18AM 19  Q.   And what do you mean by that, "wouldn't be the

11:45:22AM 20  standard of care"?

11:45:23AM 21  A.   The standard of care is the generally recognized

11:45:26AM 22  way -- the right way to do things in a particular

11:45:29AM 23  profession.  And a lot of what I do as an expert witness

11:45:32AM 24  for brokers and lawyers is talk about those standards of

11:45:38AM 25  care.  That's what I mean by standard of care.

11:50:24AM 1   talking about in terms of whether something is a deposit

11:50:27AM 2   versus whether or not it is a straight fee?

11:50:29AM 3   A.   Yes.   I see in Line 508, which reads to me as,

11:50:36AM 4   "Estimated final utility bill to Seattle Public

11:50:41AM 5   Utilities."   And following that, in 509, "estimated final"

11:50:47AM 6   something "to Seattle City Light.

11:50:49AM 7   Q.   "Light bill," I think it says.

11:50:52AM 8   A.   Okay.

11:50:53AM 9   Q.   Is that what you mean by whether something is a

11:50:57AM 10  deposit as opposed to it being a fee?

11:50:59AM 11  A.   Yes.

11:51:00AM 12  Q.   And what about the Hs that we see indicated here,

11:51:04AM 13  both at 506, which is the tax payment, as well as 508 and

11:51:08AM 14  509?   What do those signify?

11:51:13AM 15  A.   It could be hold-back, which is another kind of a

11:51:15AM 16  deposit.

11:51:16AM 17  Q.   And have you seen that used before to indicate,

11:51:19AM 18  again, that they are continuing to hold money that belongs

11:51:22AM 19  to --

11:51:23AM 20  A.   I see it occasionally.   It is not a common practice.

11:51:26AM 21  The more common practice would be this "Est," period, that

11:51:30AM 22  begins at Lines 508 and 509.

11:51:33AM 23  Q.   And then if we look at 507, this is where it says,

11:51:39AM 24  "Reconveyance fee to the Post Closing Department."   There

11:51:41AM 25  is no estimated or H next to that.   What does that signify

11:51:45AM 1    to you, and what does it mean in the industry if it is

11:51:47AM 2    listed that way on a HUD-1?

11:51:50AM 3    A.   That it is being paid to the Post Closing Department,

11:51:52AM 4    and it will be the Post Closing Department's money when it

11:51:57AM 5    is paid.

11:51:58AM 6    Q.   So it is a fee as opposed to the borrower's money?

11:52:02AM 7    A.   Just as it says, a fee.  As we saw with the

11:52:04AM 8    earlier -- this is a combined -- two of the columns we

11:52:07AM 9    looked at earlier, it is not only to whom it was paid but

11:52:11AM 10   for what purpose, the reconveyance fee.

11:52:13AM 11   Q.   If we could back out and go to Page 7 of this

11:52:18AM 12   document.  Because this is Old Republic, I just want to

11:52:24AM 13   look at the settlement instructions.  If you could

11:52:26AM 14   highlight the top, please, the supplement.  So this is a

11:52:32AM 15   set of settlement instructions -- or escrow instructions

11:52:35AM 16   in the closing agreement for Old Republic; is that right?

11:52:38AM 17   A.   Yes.

11:52:38AM 18   Q.   If we could highlight the paragraph down below that

11:52:41AM 19   says, "Settlement statement approved."  Again, is this

11:52:50AM 20   similar language to what we just went through with

11:52:52AM 21   Fidelity?

11:52:52AM 22   A.   Yes, it is.

11:52:53AM 23   Q.   And the same setup in terms of whether or not

11:52:55AM 24   something is estimated, it would be indicated on the

11:52:58AM 25   HUD-1?

02:19:29PM 1    Q.   Are you aware that Julie Yates testified that when

02:19:32PM 2    she went to Chicago Title they continued to operate that

02:19:34PM 3    way?

02:19:34PM 4    A.   I think her testimony was that Chicago Title didn't

02:19:38PM 5    even track reconveyances.

02:19:40PM 6    Q.   Are you aware that Carl Lago testified that at Old

02:19:45PM 7    Republic Title they took in the larger amount and refunded

02:19:52PM 8    the money they did not need?

02:19:54PM 9    A.   Yes.

02:19:54PM 10   Q.   And those title companies, they were perfectly

02:20:00PM 11   entitled to do that, right?

02:20:01PM 12   A.   Yes, they were.

02:20:02PM 13   Q.   Because that is their business model?

02:20:04PM 14   A.   They think it is.

02:20:06PM 15   Q.   You talked about Exhibit A108.  I want to show you

02:20:30PM 16   Page 2 of that exhibit.  Down at the bottom there are some

02:20:38PM 17   fees.  There is a wire service fee to Old Republic.  And

02:20:42PM 18   down there there is a delivery courier service fee right

02:20:46PM 19   below that for $27.60.  Now, just because there is no E

02:20:52PM 20   next to delivery courier service, the courier company

02:20:57PM 21   can't take that $27 and just abscond with it, never having

02:21:01PM 22   intended to deliver anything, right?

02:21:04PM 23   A.   I assume so.  Yeah, I agree with you.

02:21:07PM 24   Q.   That makes sense, right?

02:21:08PM 25   A.   That makes sense.

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**IN TACOMA**

UNITED STATES OF AMERICA,    )
    )
                  Plaintiff,    )   No. CR15-5198RBL
    )
        vs.           )
    )   JULIE YATES
TROY KELLEY,           )
    )
                  Defendant.    )

**ROUGH DRAFT**

**BEFORE THE HONORABLE RONALD B. LEIGHTON**
**UNITED STATES DISTRICT COURT JUDGE**

**March 16, 2016**

APPEARANCES:

Andrew Friedman
Richard Cohen
Katheryn Frierson
Arlen Storm
Assistant United States Attorneys
Representing the Plaintiff

Angelo Calfo
Patricia Eakes
CALFO HARRIGAN LEYH & EAKES
Representing the Defendant

04:16:50PM 1    A.   Not necessarily, in my opinion.

04:16:53PM 2    Q.   Certainly you would have something that indicated he

04:16:56PM 3    was doing that work, wouldn't you?

04:16:59PM 4    A.   Yes.  There was correspondence back and forth and

04:17:03PM 5    some phone calls.

04:17:03PM 6    Q.   And, again, you don't have any of that correspondence

04:17:06PM 7    or emails or agreement with respect to how the work was

04:17:09PM 8    going to change, because you don't have any of your

04:17:12PM 9    documents; is that fair?

04:17:13PM 10   A.   That's right.

04:17:14PM 11   Q.   Now, you are familiar with HUD-1 documents, are you

04:17:25PM 12   not?

04:17:25PM 13   A.   Yes.

04:17:25PM 14   Q.   And you understand that there is a difference on a

04:17:28PM 15   HUD-1 between listing something as an estimated fee or

04:17:32PM 16   listing something as a fee; is that fair?

04:17:34PM 17   A.   There are a few estimates that are used on HUD-1s.

04:17:42PM 18   Q.   And you would agree that the reconveyance fee that

04:17:45PM 19   was paid to PCD was never listed as an estimated fee on

04:17:48PM 20   the HUD-1, was it?

04:17:49PM 21   A.   It would not have been.

04:17:51PM 22   Q.   But there were in fact other fees that can be listed

04:17:53PM 23   and were listed on a HUD-1 as an estimated fee, correct?

04:17:57PM 24   A.   Not really fees.  Closing costs.  There are some

04:18:05PM 25   items that are estimated.  Would you like me to give you

# EXHIBIT C

┌ROUGH DRAFT ONLY -- NOT A CERTIFIED COPY!!!!!!!!!!!!!!!┐

1               UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON
2                      AT TACOMA

3

4   UNITED STATES OF AMERICA,      )  Docket No. CR15-5198RBL
                                   )
5          Plaintiff,              )  Tacoma, Washington
                                   )
6   vs.                            )  March 23, 2016
                                   )
7   TROY X. KELLEY,                )
                                   )
8          Defendant.              )  JURY TRIAL DAY 7
    _____)

9

10

          TESTIMONY OF PATRICIA LeVECK - CONTINUED
11            TESTIMONY OF ERICA CALDERAS
          BEFORE THE HONORABLE RONALD B. LEIGHTON
12     UNITED STATES DISTRICT COURT JUDGE, and a jury

13  APPEARANCES:

14  For the Plaintiff:        ANDREW C. FRIEDMAN
                              KATHERYN K. FRIERSON
15                            ARLEN R. STORM
                              Assistant United States Attorneys
16                            700 Stewart Street, Suite 5220
                              Seattle, Washington 98101-1271
17
    For the Defendant:        ANGELO J. CALFO
18                            PATRICIA A. EAKES
                              Calfo Harrigan Leyh & Eakes, LLP
19                            999 3rd Avenue, Suite 4400
                              Seattle, Washington 98104
20

21
    Court Reporter:           Teri Hendrix
22                            Union Station Courthouse, Rm 3130
                              1717 Pacific Avenue
23                            Tacoma, Washington  98402
                              (253) 882-3831
24

25  Proceedings recorded by mechanical stenography, transcript
    produced by Reporter on computer.

ROUGH DRAFT ONLY -- NOT A CERTIFIED COPY!!!!!!!!!!!!!!!

1  items, do you see that?

2  A.  I do.

3  Q.  One of the reductions is for a real estate tax payment, do

4  you see that?

5  A.  Yes.

6  Q.  Do you see the H next to that ma'am?

7  A.  Yes.

8  Q.  That indicates it's a hold-back?

9  A.  Yes.

10  Q.  That means the customer is being advised there may be a

11  return of refunds relating to that item?

12  A.  Yes.

13  Q.  And similarly there are hold-backs even noted on lines

14  508, 509, estimated final utility bill to Seattle Public

15  Utilities, estimated final light bill to Seattle City Light;

16  do you see that?

17  A.  Yes.

18  Q.  It's specifically listed on the HUD as an estimated item,

19  correct?

20  A.  Yes.

21  Q.  There's an H there which would tell the customer that this

22  item was related to funds that Old Republic would refund or

23  return in the event they were not needed correct?

24  A.  Yes, because we were holding them back in the escrow.

25  Q.  Exactly.  If it turn out the customer was owed money you

┌ROUGH DRAFT ONLY -- NOT A CERTIFIED COPY!!!!!!!!!!!!!!!

1  would take that money out of escrow and refund it to the

2  customer, correct?

3  A.  Yes.

4  Q.  Now, the 507 is listed as a reconveyance fee to the Post

5  Closing Department in the amount of $300 do you see that?

6  A.  Yes, I do.

7  Q.  And that is the language that Old Republic chose to use in

8  describing the fee that went to the Post Closing Department

9  right?

10  A.  It wasn't the language, it was the language that this

11  closer chose to use.

12  Q.  And the closer would be somebody employed by you, right?

13  A.  Yes.

14  Q.  So let me ask again that language used on the settlement

15  statement, reconveyance fee to the Post Closing Department was

16  chosen by Old Republic in terms of describing it to the

17  customer, correct?

18  A.  Yes.

19  Q.  Now, if we could come back out from this section please.

20  Now, at a typical closing, there is a settlement statement and

21  accompanying that document are escrow instructions, correct?

22  A.  Yes.

23  Q.  If we could go, proceed down through here to this sex

24  here.

25      These are escrow instructions related to the Jager

ROUGH DRAFT ONLY -- NOT A CERTIFIED COPY!!!!!!!!!!!!!!!

1  right?

2  A.  Yes.

3  Q.  And they would say I am promised that I will never claim

4  there is a verbal agreement related to these escrow

5  instructions, right?

6  A.  Yes.

7  Q.  And again, Mr. Kelley had nothing to do with the

8  preparation of those escrow instructions, did he?

9  A.  No.

10  Q.  That was done by escrow employees at Old Republic, right?

11  A.  Yes.

12  Q.  When the money came into escrow from Old Republic it was

13  money that came in from the lender?

14  A.  Usually yes.

15  Q.  If it didn't come in from the lender it came in from the

16  person who was purchasing the property, correct?

17  A.  Yes.

18  Q.  That money was not Old Republic's money, was it?

19  A.  No, it was not.

20  Q.  The money was either the lender's money or the owner's

21  money, right?

22  A.  Correct.

23  Q.  But the only things you guys did as Old Republic was

24  exactly what the escrow customer told you to do, right?

25  A.  Yes.

┌ROUGH DRAFT ONLY -- NOT A CERTIFIED COPY!!!!!!!!!!!!!!!!

1  Q.   And in the McFerrin litigation ma'am, isn't it the case

2  that in order to fend off the class action lawyers, Old

3  Republic told federal judges that the fee that was on the

4  closing statement was plainly disclosed to the customer and

5  that the customer agreed to pay it?

6  A.   Yes.

7  Q.   When you were deposed in the McFerrin litigation you were

8  asked about reconveyance processing fees and you characterized

9  them as fees paid to a vendor corrected?

10 A.   Yes.

11        MR. CALFO:   If I could have just a moment Your Honor.

12        THE COURT:   Certainly.

13 BY MR. CALFO:

14 Q.   Now, in the McFerrin litigation, one of the things that

15 Old Republic wanted to demonstrate was how complicated a

16 reconveyance could be, correct?

17 A.   Well, I think they wanted to point out the steps sometimes

18 that needed to be taken yes.

19 Q.   Didn't you say in declarations that completing a

20 reconveyance is simple in theory and can be frequently slow

21 and complicated in reality?

22 A.   At times, yes.

23 Q.   Is that what you said in McFerrin litigation about

24 reconveyance processing?

25 A.   I would have to look at that once again to be sure I said

┌ROUGH DRAFT ONLY -- NOT A CERTIFIED COPY!!!!!!!!!!!!!!!┐

1  Q.   That's a problem for your customer, isn't it?

2  A.   Yes.

3  Q.   It can prevent future sales or refinances?

4  A.   Yes.

5  Q.   Because no one is going to loan money on a property again

6  if they see there's a large lien or a lien on the property

7  that hasn't been taken care of, correct?

8  A.   Yes.

9  Q.   And it results on in a cloud on the borrower's or the

10 seller's title?

11 A.   Yes.

12 Q.   So bottom line this reconveyance processing work is a

13 valuable service to your customers, right?

14 A.   Yes.

15 Q.   At Old Republic and when an Old Republic customer pays the

16 fee for a service they are getting a valuable, something

17 valuable in exchange are they not?

18 A.   Yes.

19 Q.   Now, during your testimony yesterday, you mentioned the

20 fact that there was a fire at the Stewart Title offices in

21 Everett correct?

22 A.   Yes.

23 Q.   And you knew about the Stewart Everett offices in Everett

24 before the fire?

25 A.   For PCD being there?

# EXHIBIT D

```
 1              UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON
 2                    IN TACOMA

 3   _____

 4    UNITED STATES OF AMERICA,      )
                                     )
 5                    Plaintiff,     )   No. CR15-5198RBL
                                     )
 6             vs.                   )
                                     )       ROUGH DRAFT
 7    TROY KELLEY,                   )
                                     )
 8                    Defendant.     )
 9   _____

10            CROSS-EXAMINATION OF SCOTT SMITH

11   _____

12

13       BEFORE THE HONORABLE RONALD B. LEIGHTON
            UNITED STATES DISTRICT COURT JUDGE
14

15                  March 29, 2016

16

17   APPEARANCES:

18   Andrew Friedman
     Richard Cohen
19   Katheryn Frierson
     Arlen Storm
20   Assistant United States Attorneys
     Representing the Plaintiff
21

22   Angelo Calfo
     Patricia Eakes
23   CALFO HARRIGAN LEYH & EAKES
     Representing the Defendant
24

25
```

02:30:39PM 1              THE WITNESS:  I do not recall.

02:30:47PM 2    By Mr. Calfo:

02:30:49PM 3    Q.   If we could go to Page 9 of the summary judgment

02:30:52PM 4    motion, please.  If we could look at Lines 9 through 20,

02:31:02PM 5    please.  Now, in this section of the summary judgment

02:31:09PM 6    motion you were describing the transaction between

02:31:12PM 7    McFerrin -- the McFerrin plaintiffs and Old Republic.  Do

02:31:16PM 8    you see that?

02:31:16PM 9    A.   I'm sorry.  I was doing what?  I was reading it when

02:31:24PM 10   you asked me.

02:31:25PM 11   Q.   You are describing the transaction between the

02:31:28PM 12   McFerrins, Old Republic's escrow customers, and Old

02:31:34PM 13   Republic.  Do you see that?

02:31:35PM 14   A.   Yes.

02:31:35PM 15   Q.   And you wanted to make a point in this motion for

02:31:37PM 16   summary judgment that the McFerrins had had the

02:31:41PM 17   opportunity to read the instructions and the settlement

02:31:43PM 18   statement before they decided to go forward with the

02:31:47PM 19   closing, correct?

02:31:49PM 20   A.   Yes.

02:31:50PM 21   Q.   And as a part of that effort you pulled out a section

02:31:55PM 22   of the escrow instructions in which the customer

02:31:59PM 23   specifically approves paying the costs, expenses and other

02:32:03PM 24   obligations itemized on the statement.  Do you see that?

02:32:07PM 25   A.   Yes.

02:32:07PM 1  Q.   I am looking at Lines 15 through 17.

02:32:12PM 2  A.   Yes.

02:32:13PM 3  Q.   You believed that was an important point to make in

02:32:18PM 4  your effort to try to get Old Republic dismissed from the

02:32:20PM 5  litigation; is that true?

02:32:22PM 6  A.   On the contract claim.

02:32:24PM 7  Q.   So the answer is "yes," sir?

02:32:26PM 8  A.   On the contract claim, yes.

02:32:28PM 9  Q.   Can we go to the next page, please?  If we could

02:32:35PM 10 highlight the first half of the document.  In the motion

02:32:42PM 11 papers here, at Page 10 of the motion papers, you note in

02:32:49PM 12 the second sentence of this paragraph we are looking at,

02:32:52PM 13 which is at Lines 2 and 3, that the statement provided for

02:32:57PM 14 a separate $100 fee for reconveyance processing, on

02:33:01PM 15 Line 105.  Do you see that?

02:33:04PM 16 A.   Yes.

02:33:04PM 17 Q.   And then your firm took a picture of the settlement

02:33:07PM 18 statement to show that it was listed on the settlement

02:33:12PM 19 statement at 105 of the HUD statement as reconveyance

02:33:17PM 20 processing.  Do you see that?

02:33:18PM 21 A.   Yes.

02:33:18PM 22 Q.   And you wrote below that, starting at Line 8 of

02:33:24PM 23 Page 10, "The McFerrins admit knowing a separate

02:33:29PM 24 reconveyance fee was being collected in their transaction,

02:33:31PM 25 and that they agreed to pay it."  Do you see that?

02:33:33PM 1    **A.   Yes.**

02:33:37PM 2    **Q.   If we could go down to Lines 14 through 21, please.**

02:33:53PM 3    **Again, as a part of your effort to get the case dismissed**

02:33:56PM 4    **on the contract claim, you were making the point that the**

02:33:58PM 5    **McFerrins had refinanced on previous occasions, and had**

02:34:03PM 6    **paid reconveyance fees on previous occasions, and had no**

02:34:06PM 7    **questions or concerns about them.  Do you see that?**

02:34:11PM 8    **That's one of the arguments that was made at Lines 14**

02:34:13PM 9    **through 16?**

02:34:14PM 10   **A.   Yes.**

02:34:14PM 11   **Q.   If we could go to Page 11.  Now, with respect to the**

02:34:28PM 12   **Jagers' sales transaction, you essentially made the same**

02:34:33PM 13   **series of points; is that right?**

02:34:34PM 14   **A.   I would have to read it, but I probably did.**

02:34:37PM 15   **Q.   If we could go down to Lines 15 through 26, please.**

02:34:43PM 16   **Here on Page 11 of your motion for summary judgment you**

02:34:50PM 17   **took a picture of the reductions in amount due to seller**

02:34:53PM 18   **on the Jagers' settlement statement.  Do you see that?**

02:34:56PM 19   **A.   Yes.**

02:34:56PM 20   **Q.   And on there you made the point in your motion, at**

02:35:02PM 21   **Line 507 on the settlement statement, that there was a**

02:35:05PM 22   **reconveyance fee to the Post Closing Department in the**

02:35:07PM 23   **amount of $300.  Do you see that?**

02:35:10PM 24   **A.   Yes.**

02:35:13PM 25   **Q.   And you can see looking at that that it is not listed**

02:35:15PM 1    as an estimated item; is that right?

02:35:16PM 2    A.    Correct.

02:35:17PM 3    Q.    But there are, on Lines 508 and 509, estimated items

02:35:22PM 4    that are listed; is that right?

02:35:23PM 5    A.    Yes.

02:35:23PM 6    Q.    Now, if we could go to Page 18, please, Lines 7

02:35:34PM 7    through 11.  In your motion, at Lines 7 through 11 on

02:35:49PM 8    Page 18, you further make the point that plaintiffs --

02:35:51PM 9    Which are Old Republic's escrow customers, right?

02:35:55PM 10   A.    Well, the two couples in this particular lawsuit.

02:35:57PM 11   Q.    Were Old Republic's escrow customers, right?

02:36:01PM 12   A.    Were customers, yes.

02:36:02PM 13   Q.    "Plaintiffs are bound by the language of the

02:36:06PM 14   unambiguous escrow contracts that they signed and the

02:36:09PM 15   charges they expressly agreed to pay."  Do you see that?

02:36:13PM 16   A.    Yes.

02:36:13PM 17   Q.    Now, if we could look at Exhibit --

02:36:32PM 18        I think this may be a duplicate, your Honor.  I have

02:36:35PM 19   it listed as A800.

02:36:41PM 20        THE COURT:  A what?

02:36:46PM 21        MR. CALFO:  A800.  Your Honor, can I use the

02:37:04PM 22   screen for this exhibit?

02:37:05PM 23        THE COURT:  Sure.  What is the name of the

02:37:07PM 24   document?

02:37:07PM 25        MR. CALFO:  "Order Granting Defendant's Motion For

# EXHIBIT E

ROUGH DRAFT ONLY -- NOT A CERTIFIED COPY!!!!!!!!!!!!!!!

1                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
2                            AT TACOMA

3

4  UNITED STATES OF AMERICA,     )   Docket No. CR15-5198RBL
                                 )
5            Plaintiff,          )   Tacoma, Washington
                                 )
6  vs.                           )   March 24, 2016
                                 )
7  TROY X. KELLEY,               )
                                 )
8            Defendant.          )   JURY TRIAL DAY 8
   _____)

9

10

11          TESTIMONY OF ERICA CALDERAS - CONTINUED
            BEFORE THE HONORABLE RONALD B. LEIGHTON
12    UNITED STATES DISTRICT COURT JUDGE, and a jury

13  APPEARANCES:

14  For the Plaintiff:       ANDREW C. FRIEDMAN
                             KATHERYN K. FRIERSON
15                           ARLEN R. STORM
                             Assistant United States Attorneys
16                           700 Stewart Street, Suite 5220
                             Seattle, Washington 98101-1271

17  For the Defendant:       ANGELO J. CALFO
                             PATRICIA A. EAKES
18                           Calfo Harrigan Leyh & Eakes, LLP
                             999 3rd Avenue, Suite 4400
19                           Seattle, Washington 98104

20

21  Court Reporter:          Teri Hendrix
                             Union Station Courthouse, Rm 3130
22                           1717 Pacific Avenue
                             Tacoma, Washington  98402
23                           (253) 882-3831

24

   Proceedings recorded by mechanical stenography, transcript
25  produced by Reporter on computer.

┌ROUGH DRAFT ONLY -- NOT A CERTIFIED COPY!!!!!!!!!!!!!!!

1  Q.  Did you tell the Court in the document that Ms. Sutherland
2  did not receive a refund for her fees -- of any portion of the
3  fees?
4  A.  Is there a line item?
5  Q.  You can read the section that starts on page 12.  It goes
6  to page 14.
7  A.  So I don't see that it says one way or another about a
8  refund.
9  Q.  If we could go to page 14 and blow up the section that
10  says "D Post Closing Department."  Again, this is related to
11  Ms. Sutherland, correct?
12  A.  Yes.
13  Q.  What you said to the Court about Ms. Sutherland in this
14  section was that Fidelity received a report from PCD showing
15  that PCD tracked the NCB Deed of Trust and it had been
16  reconveyed, do you see that?
17  A.  Yes.
18  Q.  It says, "Fidelity heard nothing further from Sutherland
19  until this lawsuit.  Sutherland had not sought any refund from
20  PCD.  She has no information to dispute that PCD performed a
21  service to earn the $135 fee."  Correct?
22  A.  Correct.
23  Q.  And that's what you represented to the Court about the
24  fact that that fee had been earned, the $135, correct?
25  A.  We told the Court that the plaintiff had no information to

-ROUGH DRAFT ONLY -- NOT A CERTIFIED COPY!!!!!!!!!!!!!!!-

1  dispute that PCD performed a service to earn the $135 fee.  We
2  did not take a position that PCD earned the $135 fee.  It says
3  what it says.
4  Q.  All right.  And you actually did take Ms. Sutherland's
5  deposition?
6  A.  I did.  Well, my partner did, I believe.
7  Q.  We can see here in the brief that you are citing to a
8  piece of the record related to that statement that you just
9  made that she has no information to dispute that PCD performed
10  a service to earn the $135 fee, do you see that?
11  A.  I do.
12  Q.  Let's take a look at A-719.
13          MS. EAKES:   May I approach?
14          THE COURT:   Yes.
15  BY MS. EAKES:
16  Q.  Now, Exhibit A-719 is Exhibit 19 to the declaration.  I
17  will represent to you that this is a portion of the citation
18  that you have in the record from that brief at 88, at 7
19  through 21, do you see that?
20  A.  I am finding it.  Deposition page 88?
21  Q.  It's actually deposition page 89.  You said a moment ago
22  that your partner, Mr. Fogarty, is the person who actually
23  took Ms. Sutherland's deposition; is that right?
24  A.  That's right.
25  Q.  If we could turn to page -- I am sorry, I will offer

┌ROUGH DRAFT ONLY -- NOT A CERTIFIED COPY!!!!!!!!!!!!!!!─

1   performed even when the lender charges for reconveyance
2   services," right?
3   A.   Cited their very own Complaint for that, yes.
4   Q.   You also said, "Thus, while plaintiffs made a fee to PCD,
5   they received a service in exchange and thus were not harmed";
6   is that right?
7   A.   That's correct.
8   Q.   Now, if we scroll down, there's a footnote at the bottom
9   of the page, and just so the footnote makes sense, if you can
10  go up to the top where it says "second" and go down to line 8,
11  please, from the top to line 8.
12       So you see that there's a citation to footnote No. 4 here;
13  is that right?
14  A.   Yes, I see it, but let me read this sentence.   Yes.
15  Q.   So what you said in this section, assuming arguendo that
16  there was a duty to disclose, defendant satisfied any such
17  duty by disclosing.   With respect to the reconveyance fee,
18  plaintiffs admit that the fee was initially -- was indeed
19  disclosed, that they knew by the closing that their lenders
20  had charged for reconveyance services, the plaintiffs agreed
21  to the payment of all fees listed on the HUD-1 and plaintiffs
22  directed payment to PCD, and then you have footnote 4?
23  A.   Yes.
24  Q.   Do you see that?   If we could go down to footnote 4.   It
25  says, "Even if PCD were not a third-party, defendants would

# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**IN TACOMA**

---

UNITED STATES OF AMERICA,      )
                               )
                Plaintiff,     )   No. CR15-5198RBL
                               )
        vs.                    )   **TESTIMONY OF JULIE YATES**
                               )      **& CARLTON LAGO**
TROY KELLEY,                   )
                               )
                Defendant.     )

---

**ROUGH DRAFT**

---

**BEFORE THE HONORABLE RONALD B. LEIGHTON**
**UNITED STATES DISTRICT COURT JUDGE**

**March 17, 2016**

APPEARANCES:

Andrew Friedman
Richard Cohen
Katheryn Frierson
Arlen Storm
Assistant United States Attorneys
Representing the Plaintiff


Angelo Calfo
Patricia Eakes
CALFO HARRIGAN LEYH & EAKES
Representing the Defendant

```
 1                         EXAMINATION INDEX

 2   EXAMINATION OF                                          PAGE
       JULIE YATES          CONTINUED CROSS-EXAMINATION        3
 3                          By Ms. Eakes
                            REDIRECT EXAMINATION              42
 4                          By Mr. Friedman
                            RECROSS-EXAMINATION               64
 5                          By Ms. Eakes
       CARLTON LAGO         DIRECT EXAMINATION                73
 6                          By Mr. Storm
                            CROSS-EXAMINATION                137
 7                          By Mr. Calfo

 8

 9

10                          EXHIBIT INDEX
     EXHIBITS ADMITTED                                       PAGE
11     A542                                                    5
       2702                                                   47
12     402                                                    86
       403                                                    88
13     404                                                    99
       407                                                   103
14     414                                                   109
       417                                                   112
15     418                                                   112
       419 & 420                                             118
16     421, 422 & 423                                        124
       425                                                   126
17     429 & 430                                             128
       431                                                   130
18     1303                                                  134
       1309                                                  136
19     A602                                                  144
       A407                                                  147
20     408                                                   163
       A1501                                                 166
21     A411                                                  182

22

23

24

25
```

ROUGH DRAFT

41

10:20:55AM  1   with getting fees lower because the fees were passed on to

10:20:58AM  2   the consumer.  They didn't affect the bottom line."

10:21:02AM  3   A.   Yes.

10:21:02AM  4   Q.   Did you say that?

10:21:03AM  5   A.   Yes.

10:21:03AM  6   Q.   In fact, Fidelity wasn't out any money with respect

10:21:06AM  7   to the reconveyance fees, correct?

10:21:08AM  8   A.   That's correct.

10:21:09AM  9   Q.   That was the borrower's money, it wasn't Fidelity's

10:21:12AM 10   money that was being paid to PCD, correct?

10:21:14AM 11   A.   That's correct.

10:21:14AM 12   Q.   And Fidelity didn't have any ownership interest in

10:21:16AM 13   that money, correct?

10:21:17AM 14   A.   Not in that $15, no.

10:21:19AM 15   Q.   They didn't have an ownship interest in any of the

10:21:22AM 16   money that was being paid to PCD, correct?

10:21:26AM 17   A.   I don't understand what you mean by "ownership."

10:21:29AM 18   Q.   It wasn't Fidelity's money, whether it was $405 or it

10:21:34AM 19   was $15?  It wasn't Fidelity's money, correct?

10:21:38AM 20   A.   That's correct.  It is always the borrower's money.

10:21:41AM 21   Q.   No matter what the amount was that was paid to

10:21:44AM 22   Mr. Kelley, correct?

10:21:44AM 23   A.   For all the fees associated with the closing, yes.

10:21:55AM 24        MS. EAKES:  That's all I have.  Thank you.

10:21:57AM 25        THE COURT:  Redirect.

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**IN TACOMA**

---

UNITED STATES OF AMERICA,           )
                                    )
                Plaintiff,          )   No. CR15-5198RBL
                                    )
        vs.                         )   TESTIMONY OF JULIE YATES
                                    )        & CARLTON LAGO
TROY KELLEY,                        )
                                    )
                Defendant.          )

---

ROUGH DRAFT

---

BEFORE THE HONORABLE RONALD B. LEIGHTON
UNITED STATES DISTRICT COURT JUDGE

March 17, 2016

APPEARANCES:

Andrew Friedman
Richard Cohen
Katheryn Frierson
Arlen Storm
Assistant United States Attorneys
Representing the Plaintiff


Angelo Calfo
Patricia Eakes
CALFO HARRIGAN LEYH & EAKES
Representing the Defendant

1                              EXAMINATION INDEX

2    EXAMINATION OF                                                    PAGE
       JULIE YATES          CONTINUED CROSS-EXAMINATION             3
3                           By Ms. Eakes
                            REDIRECT EXAMINATION                      42
4                           By Mr. Friedman
                            RECROSS-EXAMINATION                       64
5                           By Ms. Eakes
       CARLTON LAGO         DIRECT EXAMINATION                        73
6                           By Mr. Storm
                            CROSS-EXAMINATION                        137
7                           By Mr. Calfo

8


9


10                             EXHIBIT INDEX

     EXHIBITS ADMITTED                                             PAGE
11     A542                                                           5
       2702                                                          47
12     402                                                           86
       403                                                           88
13     404                                                           99
       407                                                          103
14     414                                                          109
       417                                                          112
15     418                                                          112
       419 & 420                                                    118
16     421, 422 & 423                                               124
       425                                                          126
17     429 & 430                                                    128
       431                                                          130
18     1303                                                         134
       1309                                                         136
19     A602                                                         144
       A407                                                         147
20     408                                                          163
       A1501                                                        166
21     A411                                                         182

22


23


24


25

11:32:26AM 1    and there was no trustee fee charged, the lender delivered

11:32:31AM 2    the deed of reconveyance without a demand for payment of

11:32:35AM 3    the trustee fee.

11:32:40AM 4    Q.   When the trustee doesn't do the deed of reconveyance,

11:32:51AM 5    and the lender does it, which is one of the reasons you

11:32:55AM 6    just said fees can go undisbursed, what does Old Republic

11:32:59AM 7    Title do with those unused or undisbursed trustee fees?

11:33:04AM 8    A.   They hold them pursuant to the escrow instructions,

11:33:07AM 9    waiting for the demand to disburse them with the delivery

11:33:15AM 10   of the, reconveyance, if that is the case.  If they are

11:33:22AM 11   undisbursed after a certain period of time they are

11:33:26AM 12   sheeted to the state of Washington pursuant to the

11:33:28AM 13   Washington codes.

11:33:33AM 14   Q.   Let's talk about the first one.  You return to the

11:33:39AM 15   borrower; is that correct?

11:33:39AM 16   A.   If the deed of reconveyance is delivered without a

11:33:43AM 17   trustee fee payment required, then the funds are then

11:33:49AM 18   returned to the party who deposited them, either the

11:33:52AM 19   borrower or the seller.

11:33:53AM 20   Q.   And what if you try to find the borrower or the

11:33:57AM 21   seller and can't, is that when the sheet comes in?

11:34:00AM 22   A.   Yes.

11:34:01AM 23   Q.   Why not just keep them?  Why not just --

11:34:06AM 24   A.   It is not the company's money.  It is the money of

11:34:10AM 25   the borrower or the seller.

# EXHIBIT H

1            UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
2                    IN TACOMA

3    _____

4    UNITED STATES OF AMERICA,      )
                                    )
5                   Plaintiff,      )    No. CR15-5198RBL
                                    )
6              vs.                  )        ROUGH DRAFT
                                    )
7    TROY KELLEY,                   )
                                    )
8                   Defendant.      )

9    _____

10                REBUTTAL CLOSING ARGUMENT

11   _____

12

13        BEFORE THE HONORABLE RONALD B. LEIGHTON
            UNITED STATES DISTRICT COURT JUDGE

14

15                    April 20, 2016

16

17   APPEARANCES:

18   Andrew Friedman
     Richard Cohen
19   Katheryn Frierson
     Arlen Storm
20   Assistant United States Attorneys
     Representing the Plaintiff

21

22   Angelo Calfo
     Patricia Eakes
23   CALFO HARRIGAN LEYH & EAKES
     Representing the Defendant

24

25

03:50:05PM 1          THE COURT:  Thank you, Mr. Calfo.

03:50:10PM 2      Mr. Friedman, you have 22 minutes.  Please turn your

03:50:14PM 3  attention to Mr. Friedman, who will make his final

03:50:17PM 4  rebuttal on behalf of the government.

03:50:19PM 5          MR. FRIEDMAN:  Thank you, your Honor.  Ladies and

03:50:23PM 6  gentlemen, it has been a long trial.  We are 22 minutes

03:50:27PM 7  away.

03:50:27PM 8      It seems counterintuitive given how much testimony,

03:50:31PM 9  how many witnesses you have heard, but at heart this is a

03:50:33PM 10 pretty simple trial.  It is a simple case.  Mr. Kelley

03:50:37PM 11 lied to escrow companies to get them to give him millions

03:50:41PM 12 of dollars of borrowers' money.  He promised he would

03:50:45PM 13 refund it, he didn't.  He pocketed it.  He stole it.  He

03:50:49PM 14 lied to get that money and he kept it.  And that's fraud,

03:50:53PM 15 and that's theft.

03:50:54PM 16     One thing that was remarkable about the closing

03:50:58PM 17 argument we just heard from defense was, Mr. Calfo

03:51:01PM 18 admitted that Count 1 is really the central charge for

03:51:04PM 19 many of the charges in this case, it is the conduct that

03:51:06PM 20 underlies and leads to the other charges.  There was

03:51:09PM 21 remarkably little discussion of that.  We didn't hear

03:51:12PM 22 anything about Julie Yates, about Carl Lago, about

03:51:16PM 23 Michelle Millsap, about the witnesses at the escrow

03:51:19PM 24 companies, about the practices, about what Mr. Kelley

03:51:21PM 25 actually did, and what PCD did.  We heard almost nothing

03:51:25PM 1   about Jason Jerue.  We have an attack on Jason Jerue, but

03:51:29PM 2   almost nothing about De Lamb and Amber Murray.

03:51:32PM 3        We heard one technical argument as to why you should

03:51:35PM 4   not find Mr. Kelley guilty on Count 1.  It is an argument

03:51:39PM 5   based on a lot of questioning you've heard during the

03:51:41PM 6   trial about escrow instructions and escrow agreements.  I

03:51:45PM 7   want to address that, because that argument does not -- it

03:51:49PM 8   is not a basis to find Mr. Kelley not guilty.

03:51:53PM 9        Mr. Calfo looked at, and I would ask you to look at,

03:52:00PM 10  Instruction 18, which is Page 19 in the instructions.

03:52:02PM 11  This is the instruction that defines what stolen property

03:52:06PM 12  is.  It says --  And I will read it slowly, but please

03:52:21PM 13  look with me.  It says, "The property is stolen if it is

03:52:30PM 14  taken from one having the attributes of an owner with

03:52:34PM 15  intent to deprive him of his rights and benefits in the

03:52:36PM 16  property.  The government need not prove who owns the

03:52:39PM 17  stolen property, but it must prove that the property did

03:52:42PM 18  have an owner.  It must prove that the defendant did not

03:52:46PM 19  own it, and that he knew he did not."

03:52:49PM 20       And the key here is to look at what happened, and look

03:52:53PM 21  at the timing of it.  At the start of the transaction the

03:52:56PM 22  borrowers own the money, it is their money.  There is no

03:52:59PM 23  question about that.  Even Mr. Kelley's own expert,

03:53:02PM 24  Mr. Savitt, said under his theory title didn't pass to

03:53:06PM 25  Mr. Kelley until the time of disbursement, that is, the

03:53:08PM 1    time of closing.  It is originally the borrowers' money.

03:53:13PM 2    And the borrowers hand it to the escrow companies as they

03:53:16PM 3    get ready for the transaction.

03:53:18PM 4        This instruction tells you you need need to worry

03:53:20PM 5    about what impact that has on ownership, whether it is the

03:53:23PM 6    borrowers' or the escrow companies'.  It says the

03:53:25PM 7    government need not prove who owns the stolen property,

03:53:28PM 8    but it must prove the property did have an owner.  The

03:53:31PM 9    property still has an owner.  When the borrower hands it

03:53:34PM 10   to the escrow company it doesn't lose having an owner.  It

03:53:37PM 11   still has an owner.

03:53:38PM 12       The one thing that is clear is that owner is not

03:53:41PM 13   Mr. Kelley, it is not Post Closing Department.  So the

03:53:43PM 14   property is sitting there before closing, and it has an

03:53:46PM 15   owner.

03:53:47PM 16       Mr. Kelley has gotten himself on those HUD-1s by lying

03:53:52PM 17   to the escrow companies.  He has promised that he will

03:53:54PM 18   refund money.  That's how he has gotten the business.

03:53:57PM 19   That's why his name is on the HUD-1.  But he doesn't

03:54:02PM 20   intend to refund it.  He has decided he is going to keep

03:54:05PM 21   it.

03:54:05PM 22       And so when Mr. Kelley takes that property at the time

03:54:08PM 23   of closing, he is taking it from its owner, and he is

03:54:12PM 24   taking it with the intent to deprive that owner of the

03:54:16PM 25   rights and benefits in the property.  The central benefit

# EXHIBIT I

```
 1                UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF WASHINGTON
 2                        IN TACOMA

 3   _____

 4    UNITED STATES OF AMERICA,      )
                                     )
 5                  Plaintiff,       )    No. CR15-5198RBL
                                     )
 6             vs.                   )        ROUGH DRAFT
                                     )
 7    TROY KELLEY,                   )
                                     )
 8                  Defendant.       )
     _____
 9

10                  CLOSING ARGUMENTS

11   _____

12

13        BEFORE THE HONORABLE RONALD B. LEIGHTON
            UNITED STATES DISTRICT COURT JUDGE
14

15
                      April 20, 2016
16

17   APPEARANCES:

18   Andrew Friedman
     Richard Cohen
19   Katheryn Frierson
     Arlen Storm
20   Assistant United States Attorneys
     Representing the Plaintiff
21

22   Angelo Calfo
     Patricia Eakes
23   CALFO HARRIGAN LEYH & EAKES
     Representing the Defendant
24

25
```

11:08:21AM 1  defendant, in this case Mr. Kelley, engaged in a financial

11:08:24AM 2  transaction involving property that represented the

11:08:26AM 3  proceeds of mail or wire fraud.  So because you have to

11:08:31AM 4  show that there was financial transactions involving

11:08:34AM 5  property or proceeds of mail or wire fraud, you first have

11:08:39AM 6  to determine whether there was mail or wire fraud that

11:08:42AM 7  resulted in the proceeds.  And that's why there is the

11:08:45AM 8  instruction for finding mail and wire fraud.

11:08:50AM 9      So let's then turn to the mail and wire fraud

11:08:55AM 10 instructions.  According to the mail and wire fraud

11:09:03AM 11 instructions, the government needs to show that the

11:09:10AM 12 defendant participated or devised in a scheme to defraud,

11:09:13AM 13 essentially did he lie or make false statements in order

11:09:18AM 14 to get money.  Then we have to show that those

11:09:24AM 15 statements -- or facts stated were part of the scheme and

11:09:32AM 16 were material.  And then we have to show that the

11:09:36AM 17 defendant acted with the intent to defraud.  And then,

11:09:41AM 18 fourth, that the mails or wires were used in furtherance

11:09:43AM 19 of that scheme.

11:09:47AM 20     In this case the scheme to defraud or the false

11:09:58AM 21 statements are the same scheme alleged in Count 1.  So if

11:10:01AM 22 you find that Mr. Kelley lied to Fidelity and Old Republic

11:10:06AM 23 in order to get access to those reconveyance fees, then

11:10:12AM 24 you have met the element -- then you have also found the

11:10:14AM 25 element for the mail or wire fraud, because it is the same

11:10:19AM 1    scheme that is being alleged here in this case.

11:10:25AM 2        The materiality element is, again, a similar issue.

11:10:34AM 3    These promises, these statements that Mr. Kelley made to

11:10:37AM 4    Old Republic and Fidelity were material because they were

11:10:41AM 5    very important to those companies, as you heard from those

11:10:45AM 6    employees, and the reason why they chose Post Closing

11:10:48AM 7    Department to place on the settlement agreements and to

11:10:52AM 8    give them the reconveyance fees.

11:10:57AM 9        Moving to the third element, you also know Mr. Kelley

11:11:02AM 10   intended to deceive or cheat Fidelity and Old Republic.

11:11:06AM 11   Because as you saw by the emails, he continued to

11:11:09AM 12   represent, even as he was not refunding, that he was only

11:11:13AM 13   entitled to a flat fee of $15 in the instance of Fidelity,

11:11:18AM 14   $20 in the instance of Old Republic.  Even when he was not

11:11:24AM 15   doing as he said, he continued to make those

11:11:28AM 16   representations, and shows the intent to cheat.

11:11:32AM 17       Finally, the evidence that Mr. Kelley caused the wires

11:11:37AM 18   and mails to be used in this case, you saw that, for

11:11:42AM 19   instance, Mr. Kelley faxed from Washington state the

11:11:50AM 20   agreement between Post Closing Department and Old Republic

11:11:53AM 21   to Mr. Lago, who worked in California.  So that's an

11:11:57AM 22   example of an interstate wire that was used to further the

11:12:03AM 23   scheme.

11:12:07AM 24       Also, you heard testimony from the Post Closing

11:12:10AM 25   Department employees Amber Murray and De Lamb that they

# EXHIBIT J

1          **UNITED STATES DISTRICT COURT**
           **WESTERN DISTRICT OF WASHINGTON**
2                      **IN TACOMA**

3    _____

4    **UNITED STATES OF AMERICA,**       )
                                         )
5                   **Plaintiff,**       )   **No. CR15-5198RBL**
                                         )
6              **vs.**                   )       **ROUGH DRAFT**
                                         )
7    **TROY KELLEY,**                    )
                                         )
8                   **Defendant.**       )
9    _____

10        **CROSS & RECROSS-EXAMINATION OF PAUL SHIPLEY**

11   _____

12

13        **BEFORE THE HONORABLE RONALD B. LEIGHTON**
             **UNITED STATES DISTRICT COURT JUDGE**
14

15                   **April 12, 2016**
16

17   **APPEARANCES:**

18   **Andrew Friedman**
     **Richard Cohen**
19   **Katheryn Frierson**
     **Arlen Storm**
20   **Assistant United States Attorneys**
     **Representing the Plaintiff**
21

22   **Angelo Calfo**
     **Patricia Eakes**
23   **CALFO HARRIGAN LEYH & EAKES**
     **Representing the Defendant**
24

25

11:30:03AM 1    largest percentage of its total receipts; is that right?

11:30:06AM 2    A.   That's what it says.

11:30:07AM 3    Q.   This is a classification code that is used by the

11:30:09AM 4    government for purposes that have nothing to do with

11:30:11AM 5    expenses; isn't that right?

11:30:12AM 6    A.   Yes.

11:30:13AM 7    Q.   That is what it says right there in your IRS

11:30:16AM 8    regulations or forms, right?

11:30:19AM 9    A.   It says they use it for statistics, I believe.

11:30:26AM 10   Q.   Now, you also stated that if you have an inactive

11:30:38AM 11   business you are not permitted to take business expenses.

11:30:41AM 12   Is that your testimony?

11:30:42AM 13   A.   That is not quite what I said, sir.

11:30:45AM 14   Q.   You testified that one of the reasons these expenses

11:30:47AM 15   were no good is because he had no employees, he was

11:30:50AM 16   selling no merchandise, you went on a long list.

11:30:52AM 17   A.   There didn't appear to be any active trade or

11:30:56AM 18   business being conducted during those years.

11:30:58AM 19   Q.   Does there have to be an active trade or business?

11:31:01AM 20   A.   Yes, there does.

11:31:02AM 21   Q.   What kind of research did you do into that assertion,

11:31:04AM 22   sir?  That is a central part of your testimony.

11:31:06AM 23   A.   Well, Code Section 162, and the various court cases

11:31:10AM 24   under it.

11:31:10AM 25   Q.   Well, isn't it true that courts have held that where

11:31:18AM 1    there is a suspension of operations it doesn't necessarily

11:31:21AM 2    mean that a business is terminated for purposes of taking

11:31:24AM 3    expenses?

11:31:26AM 4    A.   Well, he filed the final return for United National.

11:31:29AM 5    I don't know --  That sounds like a termination of the

11:31:32AM 6    business.

11:31:32AM 7    Q.   I understand that is your interpretation, sir.  But

11:31:36AM 8    you understand, also, that according to the exhibit I just

11:31:38AM 9    showed you, Blackstone was going to continue on with the

11:31:41AM 10   business of United National, Blackstone its parent

11:31:45AM 11   company.  Now, if you could just for a moment assume a

11:31:48AM 12   fact that doesn't fit within your theory, isn't it true

11:31:53AM 13   that there is case law that says the mere suspension of

11:31:56AM 14   operations does not prevent someone from taking business

11:31:59AM 15   expenses?

11:31:59AM 16   A.   That could be true.  But that does not allow a

11:32:02AM 17   taxpayer to claim personal expenses relating to his

11:32:04AM 18   family, sir.

11:32:05AM 19        MR. CALFO:  Your Honor, I am going to ask again

11:32:07AM 20   that we --

11:32:07AM 21        THE COURT:  Overruled.  But persist.

11:32:11AM 22   By Mr. Calfo:

11:32:11AM 23   Q.   If you could stick to the answer -- answer the

11:32:14AM 24   question, sir.  You will have an answer to make your

11:32:17AM 25   points at some other time.  There is a case called Haft