The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

TROY X. KELLEY,

Defendant.

NO. CR 15-5198RBL

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS 1 AND 6-10 FOR OUTRAGEOUS GOVERNMENT CONDUCT**

## I. INTRODUCTION

In what Defendant, Troy Kelley, describes as a "companion motion" to his motion alleging grand jury abuse, Kelley has also filed a motion that claims that the Government's intention to call Scott Smith as a witness at Kelley's retrial constitutes "outrageous government conduct" that warrants dismissal of multiple counts. Kelley's motion is based on Kelley's claim that Smith, who previously represented Old Republic Title, provided false information during the grand jury's investigation of this case that the case agent subsequently relayed to the grand jury, and that, by calling Smith, the Government will compound the problem by suborning perjury.

Kelley's claim lacks merit. The record in this case establishes that there was a misunderstanding between Government investigators and Smith during the first interview of Smith concerning the disposition of the proceeds of a settlement between Kelley and Old Republic. Based upon that misunderstanding, FBI Special Agent Michael Brown made a



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98401
(253) 428-3800

statement to the grand jury that was partially inaccurate. That misunderstanding was, however, fully resolved prior to Kelley's first trial. As a result, the jury at Kelley's first trial heard, and the jury at his retrial will hear, how the settlement proceeds were handled.

Kelley's claim that, by calling Smith, the Government will be suborning perjury lacks merit for at least two reasons. First, a review of the transcript of Kelley's first trial shows that Smith testified truthfully, including concerning his communications with the Government. The Government fully expects that he will do so again. And, second, Kelley, rather than the Government, elicited the vast majority of the testimony about Smith's disclosures to the Government. The Government's inquiry of Smith, by contrast, focused, and will focus again, on the actual facts of Kelley's conduct, that is, on the facts that actually are material to Kelley's guilt or innocence.

Indeed, it defies logic for Kelley to claim that he is entitled to dismissal because the Government is suborning perjury concerning a subject that the Government would be perfectly happy to see excluded from the trial (and that it will stipulate to exclude, if Kelley wishes). For these reasons, Kelley cannot establish the "flagrant prosecutorial misconduct" that would warrant dismissing any charges against him. As a result, Kelley's motion should be denied.

## II. FACTS

Following Old Republic's discovery that Kelley had been failing to refund reconveyance fees to borrowers, despite his promise to do so, Old Republic sued Kelley. Smith represented Old Republic in that lawsuit. Old Republic and Kelley ultimately settled the case, with Kelley returning to Old Republic essentially all of the money that he had received from Old Republic.

On April 14, 2015, during the course of the Government's investigation, Special Agent Brown interviewed Smith. According to Special Agent Brown's report of that interview, Smith provided the following information:

> Following the settlement of [Old Republic Title's] lawsuit against [Troy Kelley, Old Republic] sent letters to the thousands of customers impacted, notifying them that they were due a refund. The letters also asked for customers to confirm their



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98401
(253) 428-3800

> contact information. A good number of these customers responded and subsequently received their refund.

Exhibit 1.

On April 15, 2015, Special Agent Brown testified before the grand jury. Special Agent Brown repeated, almost verbatim, what he had recorded in his memorandum:

> GRAND JUROR: When they got the money, did they give it to clients or did they give it to the lawyers?
>
> WITNESS: Old Republic? They notified all the borrowers that there was a refund due to them, and those that responded to confirm their address received a refund . . . . And I think that the attorney for . . . Old Republic . . . said a good number of . . . borrowers responded and got their refunds.

Docket No. 389 at 20.

Approximately 10 months later, in February 2016, the Government learned for the first time that Old Republic had in fact used most of the settlement proceeds to offset its attorneys' fees, and had used only about $170,000 to pay refunds to customers. As Smith explained in an interview,

> The settlement did not make [Old Republic] whole. They spent over 1 million in legal fees. [Kelley] had obfuscated during the course of the litigation, which slowed the process and forced [Old Republic] to spend more to investigate. There was not enough money to pay refunds for all [Old Republic] customers, so they decided to both recover a subset of attorney's fees to reimburse [Old Republic] and send refund letters to a set of customers identified by a cut off date.

Exhibit 2. The facts relating to the use of the settlement proceeds were introduced, at length, at trial.

Both Smith and Special Agent Brown also were questioned extensively about Smith's April 14, 2015, interview, primarily by the defense, which used this information to impeach Smith and Old Republic. Thus, Smith testified on cross examination that he did not recall



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98401
(253) 428-3800

whether he had said during the interview that only approximately $170,000 of settlement proceeds had been refunded to customers. Exhibit 3, at 166, 170. Smith also testified that he probably did not tell Special Agent Brown during the interview that over $650,000 of settlement proceeds had been booked to pay Old Republic's legal fees. *Id.* at 170.

Special Agent Brown, who was called as a witness by the defense, testified that he believed that Smith told him on April 14, 2015, that Old Republic contacted the thousands of customers who had not received refunds from Kelley, as reflected in Special Agent Brown's report. Exhibit 4 at 39. Special Agent Brown acknowledged, however, that his understanding concerning the disposition of settlement proceeds was in fact incorrect. *See* Exhibit 4 at 43 ("My understanding of what he told me was false.").

## III. ARGUMENT

A court has the power to dismiss an indictment "on the ground of outrageous government conduct if the conduct amounts to a due process violation [or, i]f the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). Courts have recognized "three legitimate bases for the exercise of the supervisory power: to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct." *United States v. Simpson,* 927 F.2d 1088, 1090) (9th Cir. 1990); *but see United States v. W.R. Grace*, 526 F.3d 499, 511 n.9 (9th Cir. 2008) (holding that exercise of supervisory poswrs is not limited to these three grounds). A court may dismiss a case under its supervisory power, however, only "in cases of flagrant prosecutorial misconduct." *Id.*

Kelley already has presented his claim of supposed grand jury abuse in his separate motion to dismiss based upon grand jury abuse. Docket No. 388. The Government has filed a separate answer to that motion that demonstrates that Kelley has shown only one inaccuracy in the information presented to the grand jury, that that inaccuracy was inadvertent rather than the result of bad faith, and that Kelley is not entitled to relief on his motion. Docket No. 409. Kelley's claim in his present motion differs in that it also



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98401
(253) 428-3800

complains of conduct that occurred after the return on the indictment in this case for its claim of outrageous government conduct. Kelley, however, alleges a single claim of supposed post-indictment misconduct, namely a claim that the Government relied at Kelley's first trial, and intends to rely again, on the testimony of Scott Smith. *See Defendant's Mot.* at 5. This claim fails entirely to meet the standard set forth above that would warrant dismissal.

**A. Kelley Cannot Show a Due Process Violation.**

Kelley's motion, which is devoted primarily to legal hyperbole, and almost devoid of analysis of the facts of Kelley's case, fails to establish, or even really to allege, that calling Smith as a witness at Kelley's retrial will violate due process. Nor could Kelley credibly allege such a violation.

As noted above, the only allegation in Kelley's motion that Smith has been untruthful is an allegation that he was untruthful during an April 14, 2015, interview concerning the disposition of settlement proceeds that Old Republic received from Kelley. Even that claim is not supported by the evidence. To the extent that Special Agent Brown misunderstood Smith, the differences in the men's memories establish only a misunderstanding or miscommunication – they do not establish untruthfulness. *See, e.g., United States v. Scarborough,* 43 F.3d 1021, 1026 (6th Cir. 1994) ("mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony") (*quoting United States v. Lochmondy,* 890 F.2d 822 (6th Cir. 1980). And Smith's testimony at Kelley's first trial, when he testified that he did not remember whether he had discussed certain facts, but that he believed that he probably had not disclosed that $650,000 of the money was booked to pay legal expenses, is entirely credible (and, in fact, consistent with Special Brown's testimony). Eliciting similar testimony at Kelley's retrial could not plausibly be considered suborning perjury.

In addition, none of this has anything to do with the facts at issue in Kelley's case. There is no issue regarding the disposition of the settlement proceeds, and the facts relating to that were undisputed at trial. Whether Smith revealed details of the disposition of the settlement proceeds on April 14, 2015, or later, is entirely immaterial to Kelley's guilt, and testimony about the timing of that disclosure cannot credibly be argued to violate Kelley's



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98401
(253) 428-3800

due process rights. This is particularly the case where the testimony was, and presumably again will be, elicited and emphasized by Kelley as a means to impeach Smith and Old Republic, rather than elicited and argued by the Government to prove Kelley's guilt.

**B. Kelley Cannot Meet the Requirements for the Court to Exercise Supervisory Power**

Just as he cannot establish a due process violation, Kelley cannot establish that he qualifies for any of the bases that would warrant the exercise of the Court's supervisory powers. Particularly given that the testimony that he challenges is testimony elicited primarily by Kelley himself to impeach Smith and Old Republic, Kelley cannot identify a "recognized statutory or constitutional right" violated by Smith's testimony. He similarly cannot establish that a conviction would rest on inappropriate considerations. And he cannot establish any illegal conduct on the part of the Government that dismissal would deter from recurring.

Kelley also cannot establish "flagrant prosecutorial misconduct." Significantly, none of the cases that Kelley cites involves similar facts to Kelley's own case. Rather, the cases involve egregious, but very different, misconduct that brought on the harsh remedies applied by the courts involved. *See, e.g., United States v. Chapman*, 524 F.3d 1073 (9th Cir. 2008) (prosecutor repeatedly failed to turn over *Brady* information and repeatedly made misrepresentations to the court); *United States v. Aguilar Noriega*, 831 F. Supp. 2d 1180 (C.D. Cal. 2011) (prosecutors allowed agent to testify untruthfully before the grand jury, inserted material falsehoods into search warrant applications, improperly viewed privileged materials, and recklessly violated discovery obligations).

By contrast, in the present case, the Government provided full discovery, and then called Smith, who testified truthfully. The Government then endured an extensive and effective cross examination of Smith. But in no way did it, at any point, engage in misconduct, let alone flagrant misconduct.



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98401
(253) 428-3800

## IV. CONCLUSION

For the foregoing reason, Kelley's motion should be denied.

DATED this 15th day of September, 2017.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

s/ Andrew C. Friedman
ANDREW C. FRIEDMAN
Assistant United States Attorney

s/ Arlen R. Storm
ARLEN R. STORM
Assistant United States Attorney

s/ Seth Wilkinson
SETH WILKINSON
Assistant United States Attorney

1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
Telephone: (253) 428-3800
Fax: (253) 428-3826
E-mail: Andrew.Friedman@usdoj.gov
Arlen.Storm@usdoj.gov
Seth.Wilkinson@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

s/ Andrew C. Friedman
ANDREW C. FRIEDMAN
Assistant United States Attorney

United States Attorney's Office
700 Stewart, Suite 5220
Seattle, Washington 98101-1271
Telephone: 206-553-2277
Facsimile: 206-553-0755
E-mail: Andrew.Friedman@usdoj.gov